**Maurice Anton KIENLEN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 9104.**

United States Court of Appeals
Tenth Circuit.

May 25, 1967.

Howard Washburn, Kansas City, Kan., for appellant.

Thomas E. Joyce, Asst. U. S. Atty., Kansas City, Kan., for appellee.

Before MURRAH, Chief Judge, HICKEY, Circuit Judge, and CHRISTENSEN, District Judge.

MURRAH, Chief Judge.

Appellant was sentenced on a plea of guilty to a one count indictment charging him and a co-defendant with bank robbery in violation of 18 U.S.C. § 2113 (a) and (d). He filed a motion for a new trial which was also treated by the court as notice of appeal. The motion for new trial was overruled because untimely filed, but the appeal was allowed. Counsel was appointed and the appeal perfected to this court. Contemporaneously with his motion for new trial, appellant filed a petition for writ of habeas corpus in the sentencing court which was treated as a 2255 motion to vacate sentence. An attorney was appointed and extensive evidentiary hearings were held. The petition was denied, and appellant has not appealed from that order.

On this appeal Kienlen first attacks the sufficiency of the indictment, contending that it failed to state an offense under 28 U.S.C. § 2113(a) because it did not allege the deposits of the bank were insured by the Federal De-

posit Insurance Corporation. The indictment did, however, allege that the bank "was at that time a member of and insured by the Federal Deposit Insurance Company of the United States." We held a nearly identical indictment valid in Bailey v. United States, 10 Cir., 340 F.2d 602. In accord, Hewitt v. United States, 8 Cir., 110 F.2d 1, cert. den. 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409; Rawls v. United States, 10 Cir., 162 F.2d 798, cert. den. 332 U.S. 781, 68 S.Ct. 47, 92 L.Ed. 364; Steffler v. United States, 7 Cir., 143 F.2d 772, cert. den. 323 U.S. 746, 65 S.Ct. 73, 89 L.Ed. 597.

 The indictment is also assailed because it fails to allege that the appellant assaulted and put lives in danger by the use of a dangerous weapon "while committing an offense in violation of 18 U.S.C. 2113(a)." It is thus apparently contended that the indictment failed to state a violation of 2113(d), which authorizes punishment not to exceed 25 years as opposed to the 20 year maximum sentence authorized by 2113(a). The one sentence indictment charged the taking of money belonging to the bank, a violation of 2113(a), and further charged that "in taking said money [they] did assault and put in jeopardy the lives * * * [of employees] by use of dangerous weapons, to-wit: loaded revolvers, in violation of 18 U.S.C. 2113 (a) and (d)." This indictment clearly describes substantially in the language of the statute a violation of both 2113(a) and (d). It is entirely sufficient to inform the accused of the nature of the offenses charged. See Flores v. United States, 10 Cir., 338 F.2d 966. And, moreover, while the sentence for violation of the various offenses described in 2113 may not be pyramided, i. e. see Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370, the total sentence of 12 years imposed in this case is well within the maximum prescribed for violation of either 2113(a) or (d).

██ Appellant also contends that his sentence was excessive. He points out that the 12 year sentence given him was nearly twice that assessed his co-defendant, and alleges that this resulted from confusion concerning the enhanced penalty provided by 2113(d). But, to repeat, the sentence was well within the maximum prescribed by both 2113(a) and (d). The record reveals no "confusion" or any other occurrence which would warrant our interference with the trial court's judgment. See Martin v. United States, 10 Cir., 364 F.2d 894.

 Kienlen next contends that his plea of guilty was not voluntarily and intelligently entered. This proposition could and should have been raised by a F.R.Crim.P. 32(d) motion under which, to correct manifest injustice, the court may, after sentence, set aside the judgment of conviction and permit the defendant to withdraw his guilty plea. Indeed, the appellant did in his pro se motion for new trial (which was denied by the court because untimely filed and treated as notice of appeal) use language which can be read to invoke 32(d). While the court did not consider the motion for new trial as a 32(d) motion, he did consider the identical issue of voluntariness of the plea under the contemporaneous motion for 2255 relief. We shall thus treat the postsentence pleadings in this case as in the nature of a 32(d) motion and this as an appeal from denial of relief thereunder, i. e. Cf. Bartone v. United States, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11. And, in light of the presentence record and the record of the 2255 evidentiary hearing, both of which are a part of this record on appeal, we shall consider the question whether it is manifestly unjust to preclude withdrawal of the guilty plea based upon a finding that it was voluntarily and understandably entered.

As briefed in this court, the asserted involuntariness of the plea is said to arise from the fact that appellant's appointed counsel incorrectly advised him concerning the legal test of mental responsibility for the criminal act admittedly committed by the appellant. Specifically, it is pointed out that Kienlen originally pleaded not guilty by reason

of insanity, but subsequently changed his plea to guilty after counsel advised him that mental responsibility in this circuit was governed by M'Naughten, when as a matter of law the controlling test is stated in Wion v. United States, 10 Cir., 325 F.2d 420.[1] He argues, in effect, that if he had been advised that the broader test of Wion was applicable, he would not have changed his plea. From this he contends that his plea was not knowingly and understandably entered, hence involuntary.

It is settled that one who enters a guilty plea has no right to withdraw it, and that an application under 32(d) is addressed to the sound discretion of the court. See Callaway v. United States, 10 Cir., 367 F.2d 140; Criser v. United States, 10 Cir., 319 F.2d 849; Pinedo v. United States, 9 Cir., 347 F.2d 142, cert. den. 382 U.S. 976, 86 S.Ct. 547, 15 L.Ed.2d 468; and see Lattin v. Cox, 10 Cir., 355 F.2d 397; Maez v. United States, 10 Cir., 367 F.2d 139; Oksanen v. United States, 8 Cir., 362 F.2d 74, a case involving a presentence 32(d) motion. And, "Mistakes of counsel are not grounds for relief unless the proceedings were a mockery or resulted in the deprivation of constitutional rights." Criser v. United States, supra, 319 F.2d 850. With these principles in mind we must look to the whole record before us to determine whether it is manifestly unjust to preclude withdrawal of appellant's guilty plea.

Kienlen's first appearance before the court was in December of 1965. At that time it was suggested that he had a history of mental difficulties and he was accordingly committed pursuant to 18 U.S.C. § 4244 to the Medical Center for Federal Prisoners at Springfield, Missouri, for a determination of his present mental capacity and his ability to assist in his own defense. After 90 days' observation and examination, he was found to be "mentally capable of comprehending his position and assisting counsel in his defense."

On March 18, 1966, appellant was brought before the court for arraignment. When informed of the results of the 4244 examination, he stated that he had no disagreement with that report.[2] Counsel, with whom appellant had previously conferred, was appointed to represent him, and appellant then entered his plea of not guilty by reason of insanity.

Appellant next came before the court about six weeks later for a hearing on certain defense motions. At the beginning of the hearing, appointed counsel stated that Kienlen had indicated a desire to change his plea. When the court asked counsel if he was satisfied that appellant knew what he was doing, counsel replied that he thought so, but stated that since the decision to plead guilty was Kienlen's alone, perhaps the court should question him. The court thereupon questioned Kienlen at some length, ascertaining that he understood and confirmed what his attorney had said relative to his desire to enter a change of plea. Kienlen stated his understanding that by a plea of guilty he would admit all the facts alleged in the indictment, waive his right to jury trial and subject himself to punishment within the maximum fixed by law, i. e. $10,000 or 25 years or both. He further stated that he had not been led to believe he would receive a lesser punishment by

---

1. An accused is criminally responsible for his act under the M'Naghten Rule if he is found to have known right from wrong at the time he committed the act. Under the test of Wion, an accused is responsible for his conduct if he had substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, i. e. "he was mentally capable of knowing what he was doing, was mentally capable of knowing that it was wrong, and was mentally capable of controlling his conduct."

2. This report is a part of the record on appeal. A second 4244 examination was conducted by a private psychiatrist, apparently sometime between March 18 and May 5; his report is not in the record, but he testified in the 2255 hearing.

pleading guilty, that he had received no promises, and that he had not been threatened or abused in any way while in custody. The following colloquy then occurred.

"The Court: Is your memory clear about what happened on this day in question?

"Defendant Kienlen: Yes, sir, it is.

"The Court: And you related those facts to your attorney?

"Defendant Kienlen: Yes, sir.

"The Court: And is there any question in your own mind about your own sanity?

"Defendant Kienlen: No, sir, there is no question in my mind about my own sanity, but, sir, prior to this; I was very emotionally disturbed and everything, Your Honor, but I do realize that I did wrong but I feel at the time of the alleged offense and prior to it, the circumstances leading up to it, that I was emotionally disturbed.

"The Court: You had had some difficulty with your family or something of that sort? ·

"Defendant Kienlen: Yes, sir.

"The Court: And is this what you are telling me, that you were mad at the world and you just didn't give a hang?

"Defendant Kienlen: No, sir. I don't know actually how to go about it. It was with my child and my wife, and that is the big thing there, sir.

"The Court: But you did know what you were doing when you did it?

"Defendant Kienlen: Yes, sir, I did. With all these answers before him along with the 4244 report indicating Kienlen was competent to stand trial and assist in his defense, the court asked appellant this final question: "Are you pleading guilty for any other reason than that you committed the act charged?" Appellant replied, "No, sir", and thereupon the court accepted a plea of guilty.

Kienlen was sentenced about 3 weeks later after a presentence report had been submitted to the court. At that time the judge asked him, "Do you have anything to say in your behalf by way of explanation or mitigation or any reason to urge why the judgment and sentence of the court should not now be pronounced?" He replied, "Your, Honor, I did a pretty stupid thing and I think I have growed up considerably since this. That doesn't rectify the fact that it makes it right. The six months that I have been confined—as my lawyer stated, I would appreciate some leniency, if possible, and try to better myself when I do go back, and that's all I have, Your Honor."

A few days later the motion for new trial was filed and a few days after that the petition for habeas corpus (treated as a motion under 2255) was filed. Appellant alleged various grounds for relief in the habeas corpus petition, but it was determined that the evidentiary hearing should be restricted to the question of the voluntariness of his plea. It was also decided that since no hearing was held prior to the change of plea concerning appellant's competency to stand trial, it would be advisable to give Kienlen an opportunity in this proceeding to cross-examine the psychiatrists who examined him pursuant to the 4244 commitment. The hearing was held on July 1.

Kienlen was first to testify. He began by relating some personal history, stating that he was placed in an orphanage at age one where he remained until adopted at age two and a half; that at fourteen he was placed in a Boys' Industrial School for involvement in a car theft; that shortly thereafter, on two different occasions, he was placed in a mental hospital in Kansas for a period of about three months each time; that sometime thereafter he joined the Marines (it appears from the 4244 report that appellant was continually in trouble while in the service, that he served a sentence for being A.W.O.L. and that he was eventually given an undesirable discharge for failure to adjust to military life); and that in August, 1965, he

voluntarily committed himself for a third time to the mental hospital in Kansas and was discharged only about two months before the bank robbery was committed.

Kienlen also related some of the events which occurred immediately preceding the robbery. He admitted the commission of the robbery, but stated that he felt he was mentally incompetent when he did it. He then testified that about two weeks prior to the robbery his wife divorced him, acquiring a child support and alimony award. She apparently threatened him with jail if he did not pay. A few days later they lived together again, and appellant stated he thought they were "patching things up". But then "she said that she was going out—she told me of an affair she was having with another man, and that she was going out on a date with this man, and I, therefore,—I snapped. I lost reality, actually. I just didn't understand my wife; I didn't understand anything. I was involved in a fist fight with this man and at this time my wife said, 'I'll see that you get the penitentiary one way or another'. I then left and it was a matter of two or three days that this offense happened—occurred." He also stated that it was about this same time that he found out he was not the father of their child. As a result of this combination of events Kienlen said "I felt after this that I was in a deep mentally depressed state from all this as to what she had said."

It was also brought out in Kienlen's testimony that he knew the teller he robbed but made no attempt to disguise his identity.

When asked to tell the court why he felt he had not been adequately represented at the time he changed his plea to guilty, he replied that his appointed counsel did not attempt to obtain a competency hearing under 4244, and that counsel had failed to advise him of the procedure under Rules 11 and 32 for withdrawal of a guilty plea "which I did want to make after entering a plea of guilty". He admitted that he never in so many words requested his attorney to seek withdrawal of the plea, but said that on the day of sentencing he was "scared and tongue-tied", had only seen his attorney two or three minutes prior to entering the court room and that he didn't have time to ask about withdrawing the plea.

Appellant's appointed counsel in the presentence proceedings was next to testify. In answer to specific questions he related how he had gone about representing Kienlen. During his testimony, it was brought out for the first time that Kienlen had been advised the M'Naghten Rule was the test in the Tenth Circuit. The witness again stated what he told the court at the time appellant changed his plea. "I did not of course advise him to plead guilty in this case. I advised him the decision was up to him, and I explained to him what his rights were in this case, and I left the decision solely up to him in this matter." Apparently the significance of the witness' revelations was not immediately brought home to the examining attorneys, for nothing more was said about the mistaken advice on direct or cross. But, when the attorneys finished their examination of the witness, the court indicated his concern and proceeded to question the witness concerning the advice he gave appellant. Counsel reiterated that he had explained the various tests of insanity to the appellant, but being unaware of Wion had advised him that the strict "right and wrong" test of M'Naghten would be applied in his case.

Finally, two psychiatrists testified. One had examined Kienlen when he was at Springfield, the other after his arraignment. Both testified that Kienlen was aware of the charges and could assist counsel in his defense, i. e. he was competent to stand trial. Both diagnosed him as a "sociopathis personality". One was asked if he had an opinion as to Kienlen's capacity at the time of the robbery—he stated he had no opinion; the other psychiatrist was not asked this question.

In his memorandum opinion Judge Stanley first referred to the extensive

inquiry which was made at the time Kienlen changed his plea, and then stated the rule by which the asserted involuntariness of the plea arising from the erroneous advice of counsel would be judged, i. e. whether it was " * * * ineffective assistance of counsel of such a kind as to shock the conscience of the court and make the proceedings a farce and mockery of justice." Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436, 440. Also citing Frand v. United States, 10 Cir., 301 F.2d 102, Dodd v. United States, 9 Cir., 321 F.2d 240; United States v. Horton, 2 Cir., 334 F.2d 153; United States v. Miller, 2 Cir., 254 F.2d 523. He then stated that the record did not substantiate Kienlen's claim that the assistance he received was such as to make the proceedings against him a mockery, but rather that counsel at all times acted in what he thought was Kienlen's best interests. Conceding that counsel misadvised him on the test of mental responsibility, the court stated that "There was no showing that this mistake influenced petitioner's plea and such influence will not be presumed." The court thought it important that counsel did not advise Kienlen to change his plea, but instead advised him of the law and left the decision on how to plead solely to the appellant. Finally, the court concluded from the testimony of the two psychiatrists and appointed counsel, and from all the evidence, that Kienlen was mentally competent at the time he changed his plea to guilty. The court found that the plea was voluntarily entered and denied relief.

The case law has defined certain situations in which it is not manifestly unjust to refuse permission to withdraw a guilty plea. See Criser v. United States, supra; United States v. Parrino, 2 Cir., 212 F.2d 919; Georges v. United States, 5 Cir., 262 F.2d 426; Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436, cert. den. 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975; Vasquez v. United States, 9 Cir., 279 F.2d 34; Alexander v. United States, 5 Cir., 290 F.2d 252; United States v. Ford, 4 Cir., 363 F.2d 375; Watts v. United States, 107 U.S. App.D.C. 367, 278 F.2d 247. The logic of these cases seems clear. An innocent man is not likely to be induced to plead guilty by erroneous advice concerning the penalty or the admissibility of evidence. And to permit withdrawal of a guilty plea would be a useless thing where the defendant admits his guilt in the 32(d) hearing, or does not controvert conclusive evidence of guilt presented at the 32(d) hearing.

But, our case does not fall within any of these classes. Certainly this is not a case where it is clear beyond question that the defendant is guilty, i. e. it is not clear on this record that Kienlen was sane under Wion at the time he committed the criminal act. Indeed, the record is anything but clear. Kienlen did state when he changed his plea that he knew what he was doing at the time of the robbery; but this does not establish sanity under Wion. The record contains no psychiatric opinion as to the capacity of Kienlen at the time of the act. While he has never denied committing the robbery, Kienlen asserted in the 2255 hearing that he did not think he was then mentally competent. His other testimony and the 4244 report are indicative of mental disorder at the time of the act.

Nor is this a case of erroneous advice concerning the penalty that will be imposed or the admissibility of the evidence. Instead Kienlen was misadvised concerning an essential element of the offense charged. Upon a trial of the case on a defense of incompetence it would, of course, have been incumbent upon the Government to prove beyond a reasonable doubt the mental responsibility of the defendant under Wion, i. e. see Phillips v. United States, 10 Cir., 311 F.2d 204. We think that a competent individual who pleads guilty on the basis of incorrect advice as to what constitutes the requisite capacity to commit the crime ought not to be held to his plea. It thus becomes crucially important whether Kienlen relied upon the erro-

neous advice when he entered his change of plea. Judge Stanley recognized this, and in his comprehensive memorandum found that Kienlen did not rely on what his attorney told him as a basis for his guilty plea. On this point our case is much like United States v. Shneer, 3 Cir., 194 F.2d 598, where the dispositive question was whether the accused relied on erroneous advice of counsel to the effect that if he pleaded guilty he would receive no jail sentence at all. There the appeals court concluded that the appellant had not carried his burden of proof on the reliance issue, and affirmed the decision of the trial court denying leave to withdraw the plea of guilty.

■ Before reviewing the trial court's finding of no reliance, it may be well to point out that it would surely be manifestly unjust to permit a guilty plea entered by an incompetent to stand. But, such is not the case here. Not only was Kienlen thoroughly questioned by Judge Stanley at the time his change of plea was entered (against a background of the 4244 report), but the issue of his competency to stand trial was also thoroughly considered in the 2255 proceedings. It was there found that Kienlen was competent when he changed his plea. That finding has not been appealed and we have taken cognizance of it here. Thus, we must assume that Kienlen could make a rational decision as to whether he had a possible meritorious defense under Wion, although it may seem anomalous to do so in view of his history of mental difficulties.

■ This being so, we are constrained on this record to agree with the trial court that the evidence is insufficient to show that Kienlen changed his plea because he felt he had no possible defense on the basis of insanity under the strict right and wrong test of M'Naghten. The best evidence on this question, testimony by Kienlen, is not available, for the fact of the erroneous advice was not revealed until after Kien-

len testified, and he was not recalled to the stand. It could be argued that in view of the erroneous advice, and the fact that the decision to change the plea to guilty was Kienlen's alone, necessarily he relied upon what his attorney said was the law. But we do not think that the inference of reliance necessarily follows from these facts, and in any event, we cannot say the trial court was clearly erroneous in refusing to draw such an inference. We, therefore, hold that the plea was voluntarily and understandably entered.

■ But, in so doing, we are mindful that pleading to the charge is an exceedingly sensitive area, and we must be careful not to permit the clearly erroneous rule of evidence to work an injustice. As noted, the best evidence of reliance, the testimony of Kienlen, was not adduced in the 2255 hearing. Similarly, in United States v. Shneer, supra, the defendant's testimony was the best source of evidence on the reliance issue there presented; he had submitted an affidavit in the 32(d) hearing, but had not testified in person. That court decided that although the trial court's finding of no reliance was not clearly erroneous, nevertheless, there was some question, and if the defendant wished to pursue the matter he could come forward in a new proceeding and testify.[3] We think our case is comparable to Shneer in this regard, and we also leave the door open to the defendant Kienlen to initiate proceedings in the trial court at which he may submit evidence including his testimony on the question of whether he relied on the erroneous advice given him.

■ Two contentions remain. It is argued that appointed counsel was ineffective in the constitutional sense because of his erroneous advice on the test of mental responsibility. While it is regrettable that counsel was unaware of Wion, it is nevertheless conclusively clear that his representation was anything but

3. Shneer did bring a new proceeding which resulted in permission to withdraw his plea. United States v. Shneer, D.C., 105 F.Supp. 883.

a sham, pretense, in bad faith, or lacking in the opportunity to confer, which characterize constitutionally ineffective counsel, i. e. see Nutt v. United States, 10 Cir., 335 F.2d 817, cert. den. 379 U.S. 909, 85 S.Ct. 203, 13 L.Ed.2d 180; Alire v. United States, 10 Cir., 365 F.2d 278; Peoples v. United States, 10 Cir., 365 F. 2d 284; Frand v. United States, 10 Cir., 301 F.2d 102.

■■■■ Finally, appellant contends he should have been accorded a competency hearing prior to arraignment and certainly prior to the acceptance of his plea of guilty. We have already noted the admirably careful manner in which Judge Stanley conducted the presentence proceedings in this case, including Kienlen's committal for a 4244 examination, the results of that examination to the effect that he was competent to stand trial, and Kienlen's knowledgeable concurrence in that report at the time of his arraignment. Section 4244 provides that where "the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto." However, if the report of the psychiatrist concludes that the defendant is not presently insane or mentally incompetent, the trial court is not required to hold a competency hearing prior to accepting a plea at arraignment. Coffman v. United States, 10 Cir., 290 F.2d 212; Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812, cert. den. 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed. 2d 100. When a defendant subsequently raises the issue of mental incompetency at the time of trial by filing a 2255 motion to vacate, he is then entitled to an evidentiary hearing on the issue. Butler v. United States, 10 Cir., 361 F.2d 869; Nunley v. United States, 10 Cir., 364 F. 2d 825. Kienlen has had this hearing, and the trial court found in that 2255 proceeding that he was competent to stand trial and assist in his defense.

Appellant has not appealed that finding, and for good reason. We perceive no error in the failure of the court to hold an evidentiary hearing on the question of competency to stand trial prior to arraignment or change of plea.

The judgment is affirmed.