UNITED STATES of America,
Plaintiff-Appellee,

v.

Marie Theresa HAALA,
Defendant-Appellant.

No. 75–1353.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 27, 1976.

Decided Feb. 19, 1976.

Rehearing Denied March 12, 1976.

John E. Green, Acting U. S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

George S. Corbyn, Jr., Berry, Nesbitt & Berry, Oklahoma City, Okl., for defendant-appellant.

Before HOLLOWAY, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendant-appellant was convicted, pursuant to 18 U.S.C. Section 1716, of the charge that on June 25, 1974, at Stillwater, Oklahoma, she knowingly and willfully caused to be delivered by United States Mail to one Beverly Oines, a nonmailable thing described in the indictment as an infernal machine which contained a composition which might ignite or explode, and kill or injure another, or injure the mails or other property. The indictment's continued allegation was that it was addressed to Mrs. Beverly Oines at her residence in Stillwater, Oklahoma, with postage affixed which had been cancelled at St. Joseph, Missouri. The further allegation was that this mailing of an explosive was with intent to kill or injure Beverly Oines.

Beverly Ann Oines testified that on the morning of June 25, 1974, at her home in Stillwater, Oklahoma, she received a package which exploded when she opened it. She said the package was the size of a child's shoe box which was wrapped in brown paper and had no return address. She further said that her daughter handed it to her. Mrs. Oines opened the package at once, using her fingernail to open the side and then to fully open it. It exploded as she started lifting. Pictures of the package as it was opened were identified. The first thing she did was put the fire out on her clothes and then call the police. She suffered burns on her arms and scars on her arms and chest from the burns. She also had trouble with her eyes during that summer. The police took the exploded bomb with them, it having been placed in the sink by Mrs. Oines.

Mrs. Oines stated that she had known the defendant for a period of nine or ten years, having first met her when she was a student of Mrs. Oines' husband and that she was a close friend of the family. To her knowledge, her husband and defendant had an intimate affair; in fact, defendant had a child as a result of it.

The alleged errors do not pertain to the sufficiency of the evidence but, rather, are contentions that the trial court erred in its rulings.

First, in its failure to suppress the fruits of the search of the defendant's apartment and mountain cabin, the contention being that the warrants were invalid—were insufficient to constitute probable cause.

Second, the trial court erred in admitting the testimony of Inspector William J. Penley.

Third, the trial court erred in receiving the testimony of Postal Inspector Robb to the effect that defendant made a call to her attorney and her doctor and then refused to make any statement.

Fourth, the court's alleged error in refusing to give defendant's requested instruction on the theory of the case.

The affidavit of Inspector Marsicek seeking to search a certain 1974 Volkswagen Van registered to the defendant attested that he had reason to believe that certain articles listed in the affidavit for a search warrant were concealed in the vehicle. The affidavit went on: "That this affiant has received information from an expert fingerprint examiner who confirmed that Marie Theresa Haala's fingerprints were found on the inside wrapping of the subject parcel." Also alleged is that the defendant had an intimate relationship with Ronald K. Oines, husband of the victim, which resulted in the birth of a child approximately six years before. It also states that subsequent to the adoption of the child, defendant mailed a letter to Ronald K. Oines, husband of the victim, threatening the victim's children; that the relationship between defendant and Mr. Ronald K. Oines had continued. Also alleged is the fact that the defendant is an earth science teacher trained in the sciences and possesses knowledge to construct an explosive device.

Other facts are contained in the affidavit, but the items mentioned are relied on as being sufficient to constitute probable cause for the issuance by the Magistrate of the search warrant which produced masking tape and Scotch Tape, items described in the affidavit for the search warrant.

A search warrant was also issued directed to the premises owned by defendant at Mountain Lake, Minnesota, an apartment. Like the warrant alluded to it attested that the numerous items of property set forth in the other affidavits were concealed there. It described the fingerprint evidence and the evidence of motive, the intimate relationship between the husband of the victim and the defendant.

Numerous items of property recovered in the search of the Mountain Lake property included a battery, a lantern soldering iron, shoe boxes, pieces of brown paper, black powder, a piece of wood with masking tape, rubber cement, pliers, round file, masking tape, contact cement, Duco Cement, wire cutters, cellophane tape, insulated wire and two other round files.

A further warrant was issued for the search of the dormitory room of the defendant at the University of Northern Iowa. Virtually the same factual material supported this. In this search there was recovered masking tape, cellophane tape and copper wire. The articles found in the searches were identified as similar to materials that were in the subject package.

A further controversial area concerns a summary of a statement of defendant. The defendant sought in a discovery motion "any and all admissions made by the defendant including summaries of any statements." The government's response was that it had no such statements. At a hearing on the motion, a request was made for any and all summaries of statements. The district attorney denied knowledge of any such summary. The court then said that if it developed that such statements existed they would not be allowed to be introduced. At trial the government produced a summary of statements which the defendant had made during a lengthy interrogation conducted by Inspector Penley. Most of this was not inculpating. Inspector Penley did bring out a circumstance which had probative value. Defendant had misspelled the name of the street where Beverly Oines lived in the same manner that it had been misspelled on the bomb parcel. On cross-examination Penley identified a certain paper as being a series of notes condensed by him reflecting the questions he asked defendant and the answers she gave.

Postal Inspector Robb, who questioned the defendant immediately after she had been placed under arrest, testified that he apprised her of her rights and told her that he wanted to discuss the matter under investigation. She replied that she did not care to answer any questions.

The defendant brought out through government witnesses and through witnesses called on her behalf extensive evidence showing that on the date of the mailing from St. Joseph, Missouri, she was either at the University of Northern Iowa or on a field trip for her palentology class at a place called Rockford, Iowa, north of Cedar

Falls. After the field trip, she went to Mountain Lake, Minnesota, and on June 15 returned to her parents' house in Springfield, Minnesota, where she remained until June 16, Sunday.

All of this was designed to prove the impossibility of her having been present at the St. Joseph, Missouri Post Office to mail the package. It supported her tendered instruction (which the court rejected) submitting the alibi issue to the jury.

## I.

### THE ALLEGED ERROR OF THE TRIAL COURT IN DENYING THE MOTION OF DEFENDANT TO SUPPRESS THE AFFIDAVITS IN SUPPORT OF THE SEARCH WARRANTS

The main assertion is that the affidavits are not factual but are conclusory and therefore are legally inadequate. The argument ignores the effect of the fingerprint of the accused being shown to have been on the paper which was used in the bomb parcel or package. Similarly, it overlooks the evidence reflecting the existence of a motive on the part of the defendant to send the bomb—the evidence of the long-term intimate relationship between the defendant and husband of the victim including the fact that Mr. Oines had fathered the defendant's child six years before and had continued seeing her up until the time in question. Nor does it recognize the evidence that the defendant was a scientist and had the knowledge and technique required to make a bomb of the character shown to have been sent.

■ True, probable cause must be shown in the affidavit; * a search and seizure is not to be justified by evidence which is uncovered in the search. *See United States v. Dixon,* 334 F.2d 322 (6th Cir.

1964), and *see Marderosian v. United States,* 337 F.2d 759 (1st Cir. 1964).

■ The accepted definition of probable cause requires facts and circumstances within a police officer's knowledge supported by reasonable trustworthy information sufficient to warrant a man of reasonable caution to believe that the offense had been or was being committed. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *See also* 5 Orfield, Criminal Procedure under the Federal Rules, Section 41.39. The definitions thus recognize that probable cause demands a lesser quantity of evidence than that essential for a conviction.

■ The above definition of probable cause was applied in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The *Draper* Court quoted with approval the oft-cited language in *Brinegar v. United States,* 338 U.S. 160, at 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), to the effect that probable cause implies non-technical probabilities and factual and practical considerations of everyday life on which reasonable and prudent men act.

■ A much more recent decision which pursues the same standard is *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1974). Although the Court was dealing with an arrest (rather than a search), it noted that the standards governing probable cause in arrest are the same as in search. Mr. Justice Powell writing for the Court said:

Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents. See *Cupp v. Murphy,* 412 U.S. 291, 294–295, [93 S.Ct. 2000, 2003, 36 L.Ed.2d 900] (1973); *Ex parte Bollman,* [8 U.S. 75], 4 Cranch 75, [2 L.Ed. 554] (1807); *Ex parte Burford,* [7

---

* We are mindful that Rule 41(c) Fed.R.Crim. Proc., recognizes that a magistrate is empowered to require the affiant to appear personally and testify under oath, and also to present witnesses provided that the proceeding is recorded and made a part of the affidavit. At bar we do not have this problem since the affidavit

is sufficient. Moreover, although the Postal Inspector stated that he gave testimony before the magistrate, neither the record nor the affidavit reveals any facts contained in that testimony so it is of no consequence under Rule 41(c).

U.S.] 3 Cranch 448 [2 L.Ed. 495] (1806). The standard for arrest is probable cause, defined in terms of facts and circumstances "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, [85 S.Ct. 223, 225, 13 L.Ed.2d 142] (1964). See also *Henry v. United States*, 361 U.S. 98, [80 S.Ct. 168, 4 L.Ed.2d 134] (1959); *Brinegar v. United States*, 338 U.S. 160, 175–176, [69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879] (1949). This standard, like those for searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime.

420 U.S. at 111–12, 95 S.Ct. at 861.

■ Appellant's argument here appears to focus on the dearth of evidence. But in comparison to evidence which has been held sufficient in cases such as *Draper* involving a hearsay statement of an informer, the evidence at bar seems much more cogent, indisputable, trustworthy and overall substantial.

Accordingly, we disagree with the contention of counsel that the search warrant with its supporting affidavit is legally insufficient.

## II.

### THE MIRANDA ARGUMENT

■ The defendant contends that Postal Inspector Robb, a government witness, testified to the effect that the defendant, upon receiving *Miranda* warnings from him, called her attorney and her doctor and then refused to make any statement or answer any questions put to her by him. The receipt of this testimony, defendant argues, constituted plain error.[1]

The record discloses that Inspector Robb's first contact with the defendant was on July 2, 1974. She then agreed to accompany him to a nearby Postal Inspector's office. His further testimony was that:

"After we arrived at the inspector's office, I again appraised her, or apprised, of her rights orally and indicated that we wanted to discuss the matter under investigation. She indicated she did not care to answer any questions, and at this time Inspector Penley was in another office of the inspector's office, and she agreed to talk to Inspector Penley. [At that time she executed a waiver of her Miranda rights]." Record at 454–55.

The above does not therefore support the contention that the defendant refused to talk to investigators. The contrary is true. Inspector Penley had previously testified as to the conversation he had had with defendant at that time.

Inspector Robb *subsequently* testified about his second contact with defendant on July 16, 1974, at the time of her arrest. She asked to make a phone call to her attorney and her doctor. There was no testimony as to his attempted questioning of her at the time and her refusal to answer. That the defendant would call a lawyer after being arrested would not come as a surprise to a jury; it does not suggest, as contended, that she had anything to "hide."

This matter is then settled from a review of the record.

## III.

### FAILURE TO PRODUCE INSPECTOR PENLEY'S SUMMARY

The defendant argues that the court should have refused to receive Inspector Penley's testimony in view of the appearance at the trial of a summary reflecting interrogation of the defendant on July 2, 1974.

■ Rule 16(a), Federal Rules of Criminal Procedure, provides that the court may order the attorney for the government to permit defendant to inspect and copy or photograph any relevant written or recorded statements or confessions made by the defendant, the existence of which is known, or by the exercise of due diligence, may

---

1. The testimony was not objected to at trial.

become known, to the attorney for the government. The United States Attorney was not aware that such summary existed until the occasion of Penley's testimony at the trial. The summary itself was not offered in evidence and so the narrow question is whether it was error for the court to receive Penley's oral testimony in view of failure to produce the summary. The trial court overruled the defendant's objection.

The question is not whether the summary is discoverable under Rule 16(a).[2] Rule 16(d)(1) provides a sanction in the form of prohibiting the party from introducing evidence of nondisclosed material or entering such order as the court deems just under the circumstances. Thus, the Rule leaves to the discretion of the trial judge the question whether a sanction should be imposed, and it was open to the trial court to determine that there was no substantial prejudice to the defendant and that the testimony of Penley was not to be excluded. No abuse of discretion is apparent.

IV.

THE ALLEGED ERROR GROWING OUT OF THE COURT'S NOT HAVING GIVEN THE DEFENDANT'S RE-QUESTED INSTRUCTION ON ALIBI

■ The defendant's tendered instruction told the jury in substance that evidence had been introduced to establish that defendant was not in the geographic area from where the infernal machine was mailed and that, in addition, she denied that she caused the package to be delivered. The jury was further told that if after consideration of all of the evidence in the case the jury had a reasonable doubt as to whether defendant was in the geographic area from where the bomb was mailed and (a doubt) as to whether Marie Haala caused the package to be delivered, the jury was to acquit her. This instruction is similar to that which is found in Devitt and Blackmar's work on Federal Jury Practice and Instructions. The defendant's instruction not only treated the

question of her not being in the geographic area from which the machine was mailed, it also included the element whether the defendant had *caused* the package to be delivered and told the jury that if it had a reasonable doubt as to either aspect, the jury was to acquit her.

Although the court did not give what is ordinarily called the alibi instruction, it did tell the jury that before it would be justified in returning a verdict of guilty it would have to find beyond a reasonable doubt that the defendant either deposited for mailing the alleged infernal machine or caused the same to be deposited for mailing by some other person in the United States Postal System. The instruction given went on to say that unless the jury found beyond a reasonable doubt that one or the other took place in the case, the verdict would have to be one of acquittal. Thus, it covered the essentials in the defendant's instruction.

The government contends that the defendant failed to specifically object to the refusal to give the alibi instruction and so, therefore, is precluded from raising the question on appeal. There is a dispute between the parties as to whether a proper objection was made and in view of this we do not base our decision on this tenuous ground. In our opinion the court's instruction adequately covered the subject by emphasizing the necessity for the jury's finding that the defendant either personally deposited for mailing the alleged infernal machine or (in the alternative) caused the same to be deposited for mailing by some other person, and that if the jury entertained a reasonable doubt as to both of these alternatives it would have to return a verdict of not guilty. This in substance is sufficient because of the fact that it zeroed in on the absolute necessity of the government to establish beyond a reasonable doubt the deposit in the mail or the causing of the deposit in the mail. This is the general thrust of the alibi instruction that

---

**2.** See, e. g., *United States v. Jefferson*, 144 U.S.App.D.C. 177, 445 F.2d 247 (1971); *United States v. Feinberg*, 371 F.Supp. 1205 (D.Ill. 1974); *United States v. Garrett*, 305 F.Supp. 267 (S.D.N.Y.1969); but cf. *Hanks v. United States*, 388 F.2d 171 (10th Cir. 1968).

**1330**

was tendered, and hence we see no need for the court to have given the instruction in the exact words of the tendered instruction. Had the alibi instruction been given, it could have resulted in the jury's being confused as to the necessity for the defendant to have deposited the package in the mails at St. Joseph, Missouri. This, of course, was not necessary.

We have examined the court's charge and considered in its entirety we believe that it was adequate to protect the rights of the defendant.

Finding no serious error, we must affirm the conviction. It is so ordered.