UNITED STATES of America, Plaintiff-Appellee,

v.

Edward DUNN, a/k/a James Pardue, Defendant-Appellant.

No. 77–1771.

United States Court of Appeals, Tenth Circuit.

Submitted on Briefs Feb. 14, 1979.

Decided March 26, 1979.

Rehearing Denied April 20, 1979.

---

Joseph F. Dolan, U. S. Atty., and Rod W. Snow, Asst. U. S. Atty., Denver, Colo., for plaintiff-appellee.

Robert G. Duncan and Robert E. Hart of Duncan & Russell, of Kansas City, Mo., for defendant-appellant.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

In this criminal case Count I of the indictment charged that on or about September 7, 1976, defendant unlawfully and knowingly by force and violence, and by intimidation, attempted to take from the person or presence of another, property or money, in the care, custody, control, management, or possession of the First Westland National Bank, Lakewood, Colorado. Count II charged that on the same date, the defendant attempted to take from the person or presence of another, property or money, or a thing of value, in the care, custody, control, management, or possession of the First Westland National Bank, Lakewood, Colorado, the deposits of which were insured by the Federal Deposit Insurance Corporation. Further, the indictment charged that the appellant did assault and put in jeopardy the life of a person by the use of a dangerous weapon or device, in violation of 18 U.S.C. § 2113(d).

The evidence was that on September 7, 1976, two persons, one carrying a large briefcase, the other a suitcase, entered the First Westland National Bank in Lakewood,

Colorado, and one of them identified himself as a Colorado Department of Revenue agent. They asked to speak to the president of the bank, Roger Reisher. They advised Mr. Reisher that the bank owed the State of Colorado a large sum of money and demanded it. Reisher observed a gun and what he identified as a police scanner in the briefcase of one of the men. Reisher fled and the two men followed him. As they ran, a gun discharged and there was evidence that the bullet struck one of the briefcases being carried by one of the men.

On September 29, 1976, the local officers and agents of the FBI arrested the defendant-appellant and one George Chatfield, a/k/a Wayne Epperly, in the belief that Chatfield was a person who was wanted for bank robbery elsewhere. The officers were of this opinion because of statements attributed to Chatfield or Epperly and made in the presence of other persons who reported it to the local police; also, as a result of an identification of photographs by the landlady of Chatfield or Epperly.

At the time that Chatfield and Dunn were arrested, the agents observed a brochure from the First Westland National Bank and a police scanner in the car in which the two were located. Dunn also had on his person a handgun. Epperly apparently consented to a search of his apartment which contained items such as guns, wigs, makeup kits and Colorado Department of Revenue identification. Later the officers went to the home of Marlene Scott with whom the defendant-appellant was living and searched her residence. There they found a large briefcase and a suitcase which they were told belonged to the defendant-appellant herein. Thereafter, on September 30, the agents obtained a search warrant which was directed to a search of the briefcase and the suitcase. The warrant was specific in describing the suitcase and the briefcase. Many of the contents of the briefcase were received in evidence.

Before trial, a motion for determination of mental competency was filed. The court designated Dr. Miller to conduct it. On motion of the government for further examination, Dr. Frederick A. Lewis, Jr., was appointed, and on December 16, 1976, an order was entered pursuant to 18 U.S.C. § 4244 committing the defendant to the Federal Mental Institution at Springfield, Missouri. Based on reports from these doctors, the court found Dunn competent to stand trial. Subsequently, a trial was held and the jury returned a verdict of guilty on the second count, finding that the defendant had assaulted Reisher and had placed his life in jeopardy.

Neither trial errors nor the sufficiency of the evidence to support the verdict are here urged. The appeal centers on defendant's contentions, first, that the trial court erred in denying defendant's motion to quash the search warrant because of insufficient evidence of probable cause, and further, because the search warrant failed to particularly describe the items to be searched and did not describe with particularity the place or premises to be searched. A third ground in the appeal is that the search of Ms. Scott's house was an illegal, warrantless search in that the consent of Marlene Scott was coerced and obtained through trickery and unauthorized consent to the search and seizure of the briefcase and suitcase. The other point advanced is that the trial court erred in failing to hold a complete evidentiary hearing on the issue of insanity and to enter a specific finding as to defendant's competency to stand trial.

The search problem developed after the officers had obtained permission from Marlene Scott, a friend of the defendant, to take the briefcase and the suitcase from Ms. Scott's home. The suitcase and the briefcase were pointed out by Ms. Scott to the agents and these items were taken back to FBI headquarters. Subsequently, a search warrant authorizing the opening and examination of the suitcase and briefcase issued on September 30, 1976.

The affidavit in support of the warrant was signed by FBI Special Agent James E.

Huggins. It stated that on September 7, 1976, he went to the First Westland National Bank, Lakewood, Colorado, and was told that two men had entered the bank on that day and had showed Colorado Department of Revenue identifications as Morrison and Morphis. They were carrying a large briefcase and a suitcase. They showed Mr. Reisher a gun and a police scanner hidden in the cases. Reisher immediately tried to escape, and while he was escaping one of the suspects was observed discharging the gun and striking the large briefcase.

The affidavit continued:

On September 29, 1976, I participated in stopping an automobile driven by WAYNE EPPERLY and accompanied by EDWARD DUNN. In [sic] the floor of the car was a slip of paper from the First Westland National Bank as well as a police scanner. One of the parties was armed with a gun. Both were taken into custody. Special Agent Brian Jovak obtained a consent to search from WAYNE EPPERLY for his apartment. We went to 1393 Jamica [sic], Aurora, Colorado and found three guns, wigs, makeup kits, and a Colorado Department of Revenue identification in the name of Robert L. Morrison, and a plain identification card in the name of John McAphoose. We then proceeded to 1168 Alton, Aurora, where we spoke with Marlene Scott who told us that DUNN was a parttime resident. She pointed out a large briefcase which she said belonged to DUNN. The large briefcase had what appeared to be a bullet hole. Ms. Scott pointed out a suitcase which also belonged to DUNN. We seized both the briefcase and suitcase and they are currently in our custody, unopened, in the FBI office.

\* \* \* \* \* \*

The first contention is that the search warrant is insufficient for lack of probable cause, and that there is insufficient evidence in support of its authenticity.

The second contention is that the trial court failed to conduct a sufficiently complete hearing on the matter of the competency of the defendant to stand trial.

## I.

### DO THE FACTS SHOW PROBABLE CAUSE FOR THE ISSUANCE OF THE WARRANT?

The search of the home of Ms. Scott was carried out with her consent. It is not certain as to the status of defendant within that household, but it would appear that he occupied it in conjunction with Ms. Scott, because his things were found in various of the rooms. Moreover, the physical condition of the house was such as to raise the inference that he was a resident. In any event, Ms. Scott had common authority over the entire premises and she undoubtedly had the right to grant permission to search. It was her home. *See United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

In Ms. Scott's house they found the large suitcase in a basement room and Ms. Scott brought the agents the attache type briefcase, which had the large hole. This came from her room upstairs. Defendant says that Ms. Scott was coerced. The record does not show this. From what appears in the record, she voluntarily and freely consented. The total facts support the conclusion that the consent which was given was free of coercion. Also, the search warrant was legally sufficient on its face. It recites the background for the agent's knowledge and it shows that the would-be robbers had bags of the description found in the house. The briefcase which had been described as having had a bullet fired through it had a hole that corroborated that bit of evidence. One of the parties had a police scanner at the scene of the robbery, and when Epperly and Dunn were arrested such a police scanner was in the car. The agents thus had probable cause to believe that the defendants were the very persons who were involved in the attempted robbery.

In view of the background that is set forth in the search warrant, and in view

of the fact that the items which the agents sought to search were shown to have been properly in the possession of the two defendants at the scene, the issuance of the search warrant to open these bags was fully justified. To be sure, the identity of the bags was not established to a degree of absolute certainty, but it was established to the level of probability. That was all that was necessary. *See United States v. Haala*, 532 F.2d 1324 (10th Cir. 1976).

## II.

### DID THE TRIAL COURT ERR IN FAILING TO ORDER A FULL COMPETENCY HEARING?

■ The final question is whether 18 U.S.C. § 4244 [1] requires the court to proceed with a hearing whenever there has been *any* testimony as to the defendant's inability to aid in his defense. We conclude that it does not.

It is to be recalled that Dr. Frederick Miller was first appointed and then about a month later the court appointed Dr. Frederick Lewis. At the hearing on December 16, the court was examining one report, Dr. Miller's, which found that the defendant was competent and the other by Dr. Lewis which found that he was not. Miller's report suggested that the defendant was malingering. To resolve this conflict, the court ordered the defendant to be taken to the Medical Center at Springfield, Missouri, for further evaluation. There the defendant was examined by the staff and was determined to be competent to stand trial.

Dr. Jack Eardley, Chief of Psychiatry at the Medical Center, said:

His behavior, as such, is considered deliberate at this facility and even his past behavior is considered as attempts to circumvent prosecution. This was the opinion of the staff.

Following receipt of this report, the trial court concluded that the defendant was competent to stand trial. At the hearing on motion to quash the search warrant, the trial court, after disposing of the search warrant problem by denying the motion to suppress, considered the § 4244 problem. Mr. Snow, the Assistant U. S. Attorney, said:

MR. SNOW: We have one minor matter, Your Honor, I'm sorry to bore the Court. There is originally a motion on 4244, as the Court well knows; and that's not been disposed of. And since it's not been withdrawn, I know it doesn't require a hearing because the finding in Springfield was that there was no incompetence.

The court then said:

THE COURT: So far as I'm concerned, there is no evidence before me at this point that this defendant is not competent to assist in his defense and to stand trial. As far as I'm concerned, in the absence of further evidence the motion

1. Section 4244 reads, in part:

Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. * * *

for a 4244 examination has, of course, been granted; and in the absence of further evidence or further argument on the part of defense counsel, and I don't believe—from what I gather they're not in a position that they would wish to make any such argument today.

Counsel for the defendant asked for permission to recall an exhibit which was granted, but counsel for the defendant did not request a formal hearing. The remainder of the dialogue in the transcript pertains to the calendaring and trial of the case on its merits.

Some discussion was had concerning possible raising of the issue of insanity at the trial. The district attorney expressed some uncertainty as to whether such a defense could be raised. The important thing is, however, that counsel for the defendant did not request permission to have a hearing or to call witnesses on the issue of competency to stand trial.

■ The purpose of a § 4244 proceeding is to advise the trial court as to competency where defendant claims or another alleges his inability to comprehend the proceedings and to intelligently cooperate with counsel in the preparation and trial of the case. *See Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Wolf v. United States*, 430 F.2d 443, 445 (10th Cir. 1970). Where there is evidence that defendant is mentally competent, there is no requirement for any hearing, *Kienlen v. United States*, 379 F.2d 20, 29 (10th Cir. 1967), unless the court in its discretion believes it would be helpful. *See United States v. Ives*, 574 F.2d 1002 (9th Cir. 1978). Where the court has not conducted a full sanity hearing following psychiatric examination, there will be a reversal only where the defendant appeared incompetent during the trial. *United States v. Makris*, 483 F.2d 1082, 1091 (5th Cir. 1973), *cert. denied*, 415 U.S. 914, 94 S.Ct. 1408, 39 L.Ed.2d 467 (1974).

In the case at bar Dr. Lewis diagnosed the defendant as being psychotic, being in-flicted with schizophrenia and not knowing the difference between right and wrong in a given situation. This is not responsive to the problem of whether he knows what is going on and can cooperate. This is a test applicable to whether he is not guilty by reason of insanity. Nevertheless, the Springfield examination was conducted and the trial court was convinced that Dunn did understand what was going on around him and could cooperate. All of the medical reports, other than that of Dr. Lewis, indicated that the defendant's condition was feigned; that he was malingering. Additionally, the record shows that the defendant through his counsel had no further testimony to offer and did not demand a hearing.

■ We are of the opinion that the record as a whole supports the court's determination as to the defendant's competency to stand trial.

We affirm.

McKAY, Circuit Judge, dissenting in part:

While I concur in the balance of the court's opinion, I cannot agree that the trial court satisfied the requirements of 18 U.S.C. § 4244 (1976) under the circumstances of this case. Before trial the defendant made an appropriate motion pursuant to Section 4244 for a determination of his mental competency. Dr. Miller was appointed. For some reason the government was not satisfied and requested additional psychiatric examination. The request was granted and Dr. Lewis conducted an examination. Thereafter, as the majority points out,

the court was examining one report, Dr. Miller's, which found that the defendant was competent and the other by Dr. Lewis which found that he was not. . . . To resolve this conflict, the court ordered the defendant to be taken to the Medical Center at Springfield, Missouri, for further evaluation.

The third evaluation supported Dr. Miller's view.

Section 4244 provides that where a report made pursuant to the section indicates present insanity or mental incompetency in the accused, the court "*shall* hold a hearing . . . and make a finding with respect thereto." 18 U.S.C. § 4244 (1976) (emphasis added). It is clear that the trial court failed to hold such a hearing. While Dr. Lewis' diagnosis did not say in express words that the defendant was at that very moment incapable of standing trial, it did say that he was psychotic, inflicted with schizophrenia and that he did not know the difference between right and wrong in a given situation. Such a report, even though there are conflicting reports, clearly triggers the necessity for a Section 4244 hearing. Indeed, when the experts themselves disagree, a hearing is uniquely in order to, as the majority suggests, "resolve this conflict." A Section 4244 motion having been made and a report indicating mental incompetency having been produced, the mandatory language of the statute became effective and it was not required that the defendant make further demand for the necessary hearing.

Our case of *Kienlen v. United States*, 379 F.2d 20 (10th Cir. 1967), cited by the majority, simply does not support the proposition that if there is *some* evidence that the defendant is mentally competent, there is no requirement for a hearing. In that case only one report pursuant to Section 4244 was prepared. It indicated that the defendant was competent to stand trial. As no 4244 report indicated the requisite incompetency, no hearing was required by the section. The situation there contrasts markedly with the instant case where a 4244 report *did* indicate such incompetency.

Nor does *United States v. Makris*, 483 F.2d 1082 (5th Cir. 1973), *cert. denied*, 415

U.S. 914, 94 S.Ct. 1408, 39 L.Ed.2d 467 (1974), support the result reached by the majority. The trial judge in that case ordered an examination of the defendant pursuant to Section 4244. As in the instant case, the report did not say in express words that the defendant was presently incapable of standing trial. The judge thus deemed a hearing unnecessary. The Fifth Circuit concluded otherwise:

> Since the *report as a whole indicated a substantial possibility* that the defendant was then incapable "properly to assist in his own defense, . . . " under the mandatory provisions of § 4244 the court should have held a hearing specifically on the issue of the ability of the defendant to assist his counsel prior to beginning of trial.

483 F.2d at 1091 (emphasis added).

It is true that the *Makris* court stated that reversal was not the necessary result. Instead, it directed the trial court to hold a hearing on remand to determine whether the defendant had been competent at the time of his earlier trial. The Fifth Circuit noted that it would first be necessary for the trial court to evaluate the feasibility of making such a retrospective determination. In its order, the Fifth Circuit indicated that if the trial court found such a hearing infeasible, or if the hearing indicated defendant had been incompetent at the time of the earlier trial, then defendant was to be granted a new trial "at such time he may be found to be competent." *Id.* at 1092. At a minimum I would follow that course in the case before us.[1]

---

1. Other cases involving a failure to comply with Section 4244 indicate that remanding for a *nunc pro tunc* hearing to determine competency at the time of an earlier trial is not appropriate; proper disposition is considered to be reversal of the judgment directly, with remand for a new trial, the new trial to follow a determination of the defendant's competency to participate in that trial. *See, e. g., United States v. Irvin*, 450 F.2d 968, 970 (9th Cir. 1971).