UNITED STATES of America, Plaintiff,

v.

**Steven Roy BARNES, Defendant.**

**No. CR–80–118–D.**

United States District Court,
W.D. Oklahoma.

March 23, 1982.

See also, D.C., 504 F.Supp. 330.

Larry Patton, U.S. Atty., Paul Richards, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff.

## ORDER

DAUGHERTY, District Judge.

The Defendant has filed a Motion under Rule 32(d) of the Federal Rules of Criminal Procedure [1] for permission to withdraw his plea of nolo contendere and to enter a plea of not guilty by reason of temporary insanity. The Defendant, acting *pro se,* has filed a supporting Brief with exhibit, and the Government has responded with a Brief in opposition to the Motion. The Defendant bases his claim for relief upon an allegation that he was mentally incompetent to enter his plea.

This Motion comes before the Court after sentencing upon the Defendant's plea to one count of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(c) and 5871. The plea was entered pursuant to an agreement with the Government that it would move to dismiss the two other counts of the Indictment against the Defendant and the two counts in the Indictment against the Defendant's wife. The Defendant was sentenced to five years imprisonment. The agreed Motion of the Government was granted by the Court.

The Indictment, filed on August 4, 1980, alleged that the violations occurred on June 4, 1980. The Defendant originally pleaded not guilty and appeared ready for trial by jury on September 15, 1980. After a jury was empaneled, the Defendant changed his plea to nolo contendere as to the one count. The Court requested a presentence report and sentenced the Defendant on October 29, 1980.

In support of his claim of mental incompetence, the Defendant alleges that he was involved in a motorcycle accident on July 21, 1980, in which he sustained head injuries rendering him unconscious and causing "blackouts" for a long period thereafter, sometimes at a rate of three or four times a day and lasting up to 30 minutes. He claims that "the episodes of 'depersonalization' (blackouts) continued throughout the period of these various proceedings, including the time when the plea was entered." In support of these claims, Defendant offers a medical report which, he asserts, shows that the attending physician diagnosed him as suffering from the alleged "depersonalization." For further proof of

---

1. This Rule reads:

    (d) *Withdrawal of Plea of Guilty.* A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

such a mental state, he claims that on October 25th, 40 days after the plea, he became loud and boisterous and removed all of his clothing in the office of his wife's attorney and had to be forcibly removed, an event which Defendant claims he cannot remember but which he states the attorney reported to the Oklahoma Bar Association.

Finally, the Defendant claims that there was reason to question his mental state at the time he changed his plea and when he was sentenced and that the Court should have noted this and, *sua sponte,* ordered a competency hearing. Failure to do so, it is alleged, was such a denial of fundamental protection as to constitute a "manifest injustice" under Rule 32(d). The Defendant requests that the judgment and sentence be vacated, that he be permitted to enter a new plea of not guilty by reason of temporary insanity, and that the Court set an evidentiary hearing as to sanity.

■ Thus, an issue framed by the Defendant in his Motion is whether the Court committed error in failing to order a mental examination and judicial determination of mental competency under 18 U.S.C. § 4244. Such contention is clearly frivolous in view of the failure of the Defendant, the defense attorney, and the United States attorney to move the Court for such a judicial determination prior to imposition of sentence and the complete lack of any indication of mental incompetency either communicated to or observed by the Court from the behavior of the Defendant. *United States v. Dunn,* 594 F.2d 1367, at 1372 (10th Cir.1979), *cert. denied,* 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69.

■ It is settled in this Circuit that it would be manifestly unjust to permit a guilty plea entered by an incompetent to stand. *Kienlen v. United States,* 379 F.2d 20, at 28 (10th Cir.1967). To let it stand when there is adequate evidence or information before the Court to raise a "bona fide doubt" of the competency of the Defendant would violate due process, *Pate v.*

*Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Wolcott v. United States,* 407 F.2d 1149 (10th Cir.1969), *cert. denied,* 396 U.S. 879, 90 S.Ct. 156, 24 L.Ed.2d 137 (1969). A defendant who later raises the issue of mental competency at the time of entry of a plea or trial is ordinarily entitled to an evidentiary hearing on the issue of competency, but no hearing is necessary where the allegations are bald conclusions or where the records and files in the case are conclusive on the issue. *Nolan v. United States,* 466 F.2d 522 (10th Cir. 1972); *Eskridge v. United States,* 443 F.2d 440 (10th Cir.1971); *Schutz v. United States,* 432 F.2d 25 (10th Cir.1970), *cert. denied,* 401 U.S. 1002, 91 S.Ct. 1245, 28 L.Ed.2d 535 (1971); *Burke v. United States,* 427 F.2d 465 (10th Cir.1970); *Martinez v. United States,* 423 F.2d 479 (10th Cir.1970); *Kienlen v. United States, supra; Nunley v. United States,* 364 F.2d 825 (10th Cir.1966); *Butler v. United States,* 361 F.2d 869 (10th Cir.1966); *Martinez v. United States,* 344 F.2d 325 (10th Cir.1965); *McDonald v. United States,* 341 F.2d 378 (10th Cir.1965); *Nipp v. United States,* 324 F.2d 711 (10th Cir.1963); *Ellison v. United States,* 324 F.2d 710 (10th Cir.1963). An evidentiary hearing will be required where the above conditions are met and where the particular behavior or phenomenon upon which the claim of incompetence is based is not one that would "necessarily have been apparent to the trial judge," *Sanders v. United States,* 373 U.S. 1, at 20, 83 S.Ct. 1068, 1079, 10 L.Ed.2d 148 (1963), but where the observations of the trial court and the other information relied upon by the trial court do relate to the particular grounds alleged, the "trial judge is best able to evaluate the motivations of those appearing before him," and he must have discretion in this kind of matter, *Nolan v. United States, supra,* at 524. It is fundamental that an independent hearing need not always be held when a prisoner requests post-conviction relief. *Cranford v. Rodriguez,* 512 F.2d 860, n. 4 (10th Cir. 1975); *Moore v. Anderson,* 474 F.2d 1118 (10th Cir.1973).[2]

2. Even if a hearing were required, it would not automatically become necessary to produce the

Defendant at the hearing to enable him to testify. "Not every colorable allegation entitles a

The Court has carefully reviewed the record of the proceedings herein, together with the presentence report prepared by a United States Probation Officer for this district. The Court has also taken pains to recall his observations of the Defendant and the proceedings. Based on these things, the Court can find no "bona fide doubt" that the Defendant was fully competent to enter his plea of nolo contendere to the charge.

At the hearing on September 15, 1980, the parties appeared ready for trial. The Defendant and his wife both appeared, each with separate counsel. In the presence of the Defendant, the Court and counsel discussed a Motion of the Government to restrict testimony regarding a defense which the Defendant desired to raise. The putative defense related to the element of intent, and the defense had brought a gun to court to use as evidence. Counsel for the Defendant stated that it was "imperative to his defense" to show that the Defendant contacted a legitimate gun dealer to determine that the weapon involved was not illegal. The Defendant had subpoenaed the gunsmith, and when the Government challenged the defense's version of what the gunsmith would testify to, the Court decided to delay a ruling on admissibility of his testimony so that the defense could further interview the witness. The jury was then empaneled, and, following the defense's further interview with the witness, this Defendant changed his plea. The Court informed the Defendant of his various constitutional rights and inquired of the Defendant whether he understandingly and voluntarily entered his plea, and he responded affirmatively to each question. The Court fully complied with Rule 11, Federal Rules of Criminal Procedure.

Upon accepting the Defendant's plea, the Court ordered a presentence investigation and, before sentencing, received and read the 11-page report. This report included extensive discussion of the mental and emotional state of the Defendant. It reflects that after a shooting incident in November, 1979, the Defendant's son was placed in emergency custody of the Oklahoma Welfare Department but was later returned to the Defendant and his wife on the condition that they attend counseling sessions. The Defendant provided the Probation Officer with a copy of a psychological evaluation conducted by a professional clinical psychologist. The evaluation took into account the Defendant's claims of feeling "spaced out" and having "blank spaces in his memory" and having been involved with marijuana and amphetamines. The Defendant was tested on the Weschler Full Scale IQ Test, the Wide Range Achievement Test, the "MMPI," which the Court assumes means the Minnesota Multiphasic Personality Inventory, and a Rorschach Test. The evaluation was that he had average intelligence, low achievement, and a "normal" personality with tendencies to be a "loner" and somewhat pessimistic. "In summary" the presentence report stated of the psychologist's evaluation, "The tests and interviews of the evaluation indicated that the Defendant is functioning within normal limits of reality testing with no indications of psychotic thought processes." In the Probation Officer's own evaluation, she echoed this summary.

The presentence report also summarizes psychiatric evaluation of the Defendant done in 1968 by an Army psychiatrist. The psychiatrist wrote, says the report, "He is so far free from mental defect, disease or derangement as to be able to both distinguish right from wrong and to adhere to the right and to understand and to cooperate in Board proceedings." Obviously, both this and the more recent evaluation tend to negative his claim of mental incompetence at the time of the plea.[3]

---

federal prisoner to a trip to the sentencing court". *Sanders v. United States, supra,* 373 U.S. at 20, 83 S.Ct. at 1080. The Defendant's testimony could be taken by deposition upon written interrogatories authorized by *Reed v. United States,* 438 F.2d 1154 (10th Cir.1971) and The Rules Governing Section 2255 Proceedings In The United States District Court.

**3.** Upon the filing of this Motion, the United States Attorney requested the warden in charge of the Defendant to order a psychiatric

As the Court of Appeals has noted in this case, at the sentencing on October 29, 1980, the Court, prior to sentencing,

"went to great lengths to ensure that the information in the report was correct. The judge recessed the proceedings to enable Appellant to read the presentence report. He then listened to each of Appellant's proferred corrections and stated for the record that the incorrect information would be totally disregarded."

The Defendant and his attorney were given every opportunity to read this presentence report before the sentencing hearing and again during the recess in the middle of it. They were given every opportunity to challenge, correct, or add to it. At no point did either the Defendant or his attorney express the slightest disagreement with the psychological evaluations reported therein. At the sentencing hearing, the Defendant's attorney demonstrated considerable knowledge of the Defendant's problems but mentioned to the Court no health problems except an audiological one. Further, when asked whether he was addicted or presently under the influence of narcotics or dangerous drugs, the Defendant responded in the negative.

At no time did the Defendant's attorney suggest to the Court that the Defendant was not fully assisting in his defense. All indications are to the contrary. The gunsmith defense, the plea of nolo contendere rather than guilty, the Defendant's change of plea at trial, his response to questioning, his allocution, his decision at the sentencing to read the presentence report and then to correct it extensively, and his generally responsive and intelligent behavior before the Court, as the Court remembers it, all point toward his competence to enter the plea.

Further, his Motion herein is self-contradictory. Therein, he states:

evaluation, and the warden did so. However, the Defendant refused to cooperate unless his Court-appointed attorney approved. The attorney refused to respond, and the psychiatric evaluation was limited but positive. It was that "Mr. Barnes' behavior shows no bizarre patterns and that he is in good contact with

On the 15th of September, 1980, Defendant entered his plea of guilty, [sic] withdrawing the plea of not guilty previously entered. His reason for doing so was to provide protection for his wife, who was to be prosecuted on the second and third counts of the Indictment. Charges against Defendant's wife were then dismissed.

This frank statement suggests rationality rather than incompetence and contradicts the allegation that he was unable to assist his counsel in defending him. It suggests an acute awareness of himself and his environment and refutes his allegation of depersonalization.

Moreover, as to the allegation of "blackouts," if the Defendant means that term, as its common meaning denotes, that he was unconscious at the time he entered his plea or when he appeared for sentencing, the Court's own observations alone conclusively refute this allegation. Such behavior would necessarily have been observable by the Court.

Further, the exhibit to the Motion, a physician's worksheet or report, dated August 13, 1980, refutes rather than supports the allegation. It notes that the Defendant complained of "depersonalization $\times$ 2 days lasting up to 30 min. at a time & occurring 4–5 times/day." Under the heading of "diagnosis/disposition," the physician does not mention depersonalization. The obvious meaning of this is that the Defendant complained of periodic depersonalization for two days following the motorcycle accident that occurred three weeks earlier.

Finally, there is the alleged incident of the Defendant's removing his clothes at the office of his wife's attorney, which, he alleges, the attorney reported in a letter to the Oklahoma Bar Association. The Court finds it incredible that, if such an event occurred, the attorney would report such an

appropriate affect and attitude." The Defendant agrees but asserts that this is not relevant to his competency at the time of his plea. The Court considers it relevant to the question of whether there is a "bona fide doubt" of such competency.

incident to the Oklahoma Bar Association. In any event, no "bona fide doubt" is raised in the Court's mind by the proffered evidence one year and two months after sentencing.

Six days after sentencing, the Defendant through his attorney filed his notice of appeal and, ever since, has worked unremittingly to have his sentence reduced, the judgment set aside, or bond set. He has appealed on several grounds and has filed numerous motions in this Court. All have been denied.

The apparent motive for pursuing all such efforts is his dissatisfaction with the length of his sentence. There is no manifest injustice in denying a Motion to withdraw a plea for such a reason. *Miles v. United States,* 385 F.2d 541 (10th Cir.1967).

■ The Court concludes that there was evidence at the sentencing that Defendant was mentally competent, that the Defendant and his counsel had opportunities prior to and during the sentencing hearing to review such evidence, that the Defendant was on notice that the hearing was his opportunity to contest any of the statements in the presentence report, and that no question was raised by the Defendant or any other person at or before the sentencing as to the mental competency of the Defendant. In such circumstances, there is no requirement for any hearing. *United States v. Dunn, supra,* at 1372 (1979); *Kienlen v. United States, supra,* at 29. The Defendant has the burden to show manifest injustice before the Court should grant a Rule 32(d) Motion, and this should be more than speculation. *Callaway v. United States,* 367 F.2d 140 (10th Cir.1966). The Court concludes that the Defendant is not entitled to have the judgment set aside, to withdraw his plea of nolo contendere and to enter a plea of not guilty by reason of temporary insanity.

Since filing the instant Motion, the Defendant has filed a "Motion to Appoint Counsel for the Defendant" and a "Request for Extension of Time to Traverse Government's Response." In the latter, he requests an extension of time until the appointment of counsel. As the Court finds that further discovery is unnecessary and that an evidentiary hearing is not required, the Court can discern no justification for such appointment, under § 2255, Rules 6(a) and 8(c), or 18 U.S.C. § 3006A(g). *Martinez v. United States,* 344 F.2d 325 (10th Cir. 1965). Finally, Defendant's statement in his Motion to Appoint Counsel that he can produce additional medical reports is taken to be frivolous and conclusory.

The Motion is denied.