STATE of Wisconsin, Plaintiff-Respondent,

v.

William A. KRIEGER, Defendant-Appellant.†

Court of Appeals

*No. 90-1771-CR. Submitted on briefs March 15, 1991.—Decided May 1, 1991.*

(Also reported in 471 N.W.2d 599.)

† Petition to review denied.

242

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas E. Martin* and *Robin Shellow* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

ANDERSON, J. William A. Krieger appeals from a judgment of conviction and an order of the trial court denying his motions for postconviction relief. Krieger asked to withdraw his plea on the grounds that he had learned of a defense to the charges against him. He also asked the court to modify his sentence on the grounds that the sentence constituted "cruel and unusual punishment." Because we conclude that there has been no showing of a "manifest injustice" and the constitutional protection against "cruel and unusual punishment" does not justify the modification of a sentence, we affirm.

As part of a plea agreement,[1] Krieger entered a plea of no contest to eleven counts of sexual exploitation of

[1]The plea agreement provided that the state would not issue additional charges against Krieger in Waukesha, Milwaukee, Fond du Lac or nearby counties; that federal charges would not be issued; Krieger would cooperate with the investigation; the state

children, sec. 940.203(2), Stats. (1987–88); three counts of first-degree sexual assault, sec. 940.225(1)(d), Stats. (1987–88); five counts of second-degree sexual assault, sec. 940.225(2)(e); and one count of enticing a child for immoral purposes, sec. 944.12, Stats. (1987–88).[2] The amended information alleged that Krieger's criminal activities involved nine juvenile male victims and had occurred for more than five years.

An extensive sentencing hearing was conducted during which Krieger and the state presented several lay and expert witnesses and numerous exhibits. Prior to the hearing, both sides filed voluminous memoranda and the trial court reviewed a one-hour videotape summary of the pornographic material involved. At the conclusion of the hearing, the court imposed concurrent and consecutive sentences totaling fifty years in prison.

Krieger filed two motions for postconviction relief. In his first motion, he sought to withdraw his plea and enter a plea of not guilty and not guilty by reason of mental disease or defect under sec. 971.15(1), Stats.[3] His second motion sought a modification of his sentence. After a lengthy evidentiary hearing, the trial court ruled that Krieger was not entitled to any relief.

---

was not restricted on the sentence it could request; and restitution would be restricted to the twenty counts in the information.

[2]Effective July 1, 1989, these statutes were renumbered secs. 948.05, 948.02(1), 948.02(2) and 948.07, Stats., respectively. Section 55, 1987 Wis. Act 332. Because the criminal acts occurred before the effective date, all references will be to the 1987–88 statutes.

[3]Section 971.15(1), Stats., states:

> A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacked substantial capacity either to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law.

There are two issues on appeal: (1) whether it is a "manifest injustice" to deny a defendant's postconviction motion to withdraw a plea when the importance of known facts, which would support a defense to the criminal charges, was not realized until after the sentencing; and (2) whether the statistical probability that a sex offender will be subjected to physical and psychological abuse in the prison system constitutes "cruel and unusual punishment" and justifies a modification of sentence.

## WITHDRAWAL OF PLEA

As part of his preparation for the motion to modify his sentence, Krieger retained the services of Fred S. Berlin, Co-Director of the Sexual Disorders Clinic at the Johns Hopkins Hospital, for the purpose of determining whether Krieger was an appropriate candidate for asexualization by injections of a drug known as Depo-Provera.[4]

As a spin-off of this assessment, Berlin informed Krieger's counsel that he diagnosed Krieger as suffering from pedophilia, which made it impossible for Krieger to be responsible for his criminal conduct. Pedophilia is

---

[4] "Depo-Provera is a medroxyprogesterone acetate . . . similar to the progesterone hormones produced by the body naturally . . .. When administered to males, Depo-Provera lowers the level of testosterone, reduces the sex drive and in most instances causes temporary impotence. 'Clinically, it has been reported that subjects receiving the drug experience a lowered sex drive and a decrease in the frequency of erotic imagery.' . . . However, the drug is not approved by the FDA for suppressing the sex drive in the male, but its experimental use for that purpose is allowed. The drug produces an alphabet of adverse reactions from acne to cancer to weight gain." *People v. Gauntlett*, 352 N.W.2d 310, 314–15 (Mich. Ct. App. 1984) (citations omitted).

classified as sexual disorder in the *American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders* (DSM–III–R) (rev. 3d ed. 1987). DSM–III–R classified sexual disorders along with nonpsychotic disorders. *Id.* at 482, 484. Berlin opined that Krieger satisfied both the cognitive component (he did not appreciate the wrongful nature of his acts) and the volitional component (his pedophilia significantly impaired his capacity to conform his behavior to statutory requirements) of sec. 971.15(1), Stats.

In the trial court, Krieger argued that, with the development of this psychiatric evidence, he has a defense to the twenty criminal charges. He further argues that, to correct a "manifest injustice," his conviction should be vacated and he should be allowed to enter a plea of not guilty and not guilty by reason of mental disease or defect.

After noting Krieger's heavy burden at the hearing, the trial court denied Krieger's motions and held that there was no newly discovered evidence, that a different result would not occur, and that there was not a sufficient showing of "manifest injustice."

After sentencing, a defendant who seeks to withdraw a guilty or no contest plea carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw the plea to correct a "manifest injustice." *See State v. Booth*, 142 Wis. 2d 232, 235, 237, 418 N.W.2d 20, 21, 22 (Ct. App. 1987). As our supreme court had earlier stated:

> The rationale behind the use of this higher standard of proof is that once the guilty plea is entered the presumption of innocence is no longer applicable, and when the record on its face shows that the defendant was afforded constitutional safeguards, the defendant

should bear the heavier burden of showing that his plea should be vacated. Once the defendant waives his constitutional rights and enters a guilty plea, the state's interest in finality of convictions requires a high standard of proof to disturb that plea.

*State v. Walberg,* 109 Wis. 2d 96, 103, 325 N.W.2d 687, 691 (1982) (footnote omitted), *rev'd on other grounds sub nom. Walberg v. Israel,* 766 F.2d 1071 (7th Cir.), *cert. denied.,* 474 U.S. 1013 (1985). The motion is addressed to the sound discretion of the trial court and we will only reverse if the trial court has failed to properly exercise its discretion. *Booth,* 142 Wis. 2d at 237, 418 N.W.2d at 22.

The "manifest injustice" test for withdrawal of a plea after sentencing was adopted in *State v. Reppin,* 35 Wis. 2d 377, 385-86, 151 N.W.2d 9, 13-14 (1967), where the supreme court accepted the 1967 tentative draft of what is now the plea withdrawal standard, sec. 14-2.1, of the American Bar Association's (ABA) *Standards for Criminal Justice* (2d ed. supp. 1986).[5] This standard provides that, after sentencing, a motion to withdraw a

---

[5]The supreme court adopted the ABA standard because it tracked the "manifest injustice" test of Rule 32(d) of the Federal Rules of Criminal Procedure. When *State v. Reppin,* 35 Wis. 2d 377, 151 N.W.2d 9 (1967), was decided in 1967, Rule 32(d) allowed a federal court, upon motion, to correct a "manifest injustice" after sentencing by setting aside the judgment of conviction and allowing the defendant to withdraw his or her plea.

In 1983, Rule 32(d) was amended to replace the "manifest injustice" test with the requirement that a defendant seeking to withdraw a plea after sentencing had to proceed under 28 U.S.C. sec. 2255 (federal habeas corpus) and its "miscarriage of justice" test. *See* Fed. R. Crim. P. 32(d) advisory committee's notes to 1983 amendments.

plea should be granted when the defendant proves withdrawal is necessary to correct a "manifest injustice." *Standards for Criminal Justice,* sec. 14-2.1(b). By way of example the standard lists six factual scenarios that could constitute "manifest injustice."[6] The supreme court has cautioned that these examples are not exhaustive of the factual situations that could constitute "manifest injustice." *Reppin,* 35 Wis. 2d at 386, 151 N.W.2d at 14.

On appeal, Krieger ignores the "manifest injustice" test embodied in the ABA standard adopted in *Reppin.* Rather, he limits his argument to the proposition that the evidence he has presented establishes a "manifest injustice" on the merits. Before considering whether the postsentence development of a potential criminal responsibility defense under sec. 971.15(1), Stats., constitutes a situation that is a "manifest injustice," it is necessary to address some peripheral arguments made by Krieger.[7]

---

[6]When the ABA *Standards for Criminal Justice* were first adopted there were only four examples of factual situations that would independently establish "manifest injustice," sec. 14-2.1(b)(ii)(A) through (D); subsequently, two more examples were added, sec. 14-2.1(b)(ii)(E) and (F).

The examples include: (1) ineffective assistance of counsel; (2) the defendant did not personally enter or ratify the plea; (3) the plea was involuntary; (4) the prosecutor failed to fulfill the plea agreement; (5) the defendant did not receive the concessions tentatively or fully concurred in by the court, and the defendant did not reaffirm the plea after being told that the court no longer concurred in the agreement; and, (6) the court had agreed that the defendant could withdraw the plea if the court deviated from the plea agreement. Section 14-2.1(b)(ii)(A) through (F).

[7]Krieger's reliance on *People v. Tanner,* 91 Cal. Rptr. 656 (Cal. Ct. App. 1970), is misplaced. The facts developed in that

Not finding any Wisconsin cases directly on point, Krieger constructs part of his argument upon decisions involving the withdrawal of a plea *prior to sentencing.* His reliance upon these cases is misplaced because a different standard applies in such cases. To withdraw a plea before sentencing, the defendant must establish a "fair and just reason," a mere showing of some adequate reason for the request. *Libke v. State,* 60 Wis. 2d 121, 128, 208 N.W.2d 331, 335 (1973). On the other hand, the "manifest injustice" test, which is rooted in concepts of constitutional dimensions, requires the showing of a serious flaw in the fundamental integrity of the plea. *Id.*

Krieger also argues that *State v. Pohlhammer,* 78 Wis. 2d 516, 254 N.W.2d 478 (1977), can be read for the proposition that it would be a "manifest injustice" to deny a defendant the right to present a defense to a criminal charge. *Pohlhammer* does not support Krieger's argument. It holds that the running of the statute of limitations goes to personal jurisdiction and, where the statute of limitations has run its course, the court is powerless to proceed to judgment against a defendant; therefore, because the court did not have personal jurisdiction in the first place, the judgment of conviction was

---

case are vague as to whether Tanner's motion to withdraw his plea was made before or after sentencing; therefore, it is of little assistance in Wisconsin where different standards are applied, depending on whether the motion is made before or after sentencing. Likewise, Krieger's reliance on *United States v. Barnes,* 551 F. Supp. 22 (W.D. Okla. 1982), is inappropriate. In *Barnes,* the federal court considered the "manifest injustice" test in the context of whether the court should have ordered *sua sponte* a mental examination and judicial determination of Barnes' competency to proceed before accepting his guilty plea. *Id.* at 24.

vacated. *Id.* at 523–24, 254 N.W.2d at 481–82. A defense based on criminal responsibility is not a complete defense that prevents the court from proceeding against the defendant.

We turn now to Krieger's principal argument that to correct a "manifest injustice" he should be allowed to withdraw his plea and enter a plea of not guilty by reason of mental disease or defect. We begin our analysis by determining if the factual situation before us fits under any of the six factual examples in the ABA standard.

Our review of the record verifies that there was no error in the taking of Krieger's plea and that he received the full benefit of the plea agreement. We conclude that the only scenario that could apply is whether Krieger received effective assistance of counsel.

In fact, Krieger argues that if he had sought post-conviction relief on the grounds of ineffective assistance of counsel, the trial court would have been required to grant such a motion under *State v. Johnson,* 133 Wis. 2d 207, 395 N.W.2d 176 (1986), and *State v. Felton,* 110 Wis. 2d 485, 329 N.W.2d 161 (1983).

Whether a defendant seeks to overturn a jury verdict or withdraw a plea, a claim that a defendant was denied effective assistance of counsel must be grounded on a proper record. *See State v. Rock,* 92 Wis. 2d 554, 558–59, 285 N.W.2d 739, 741–42 (1979). A postconviction hearing must be held in the trial court, and trial counsel must testify and explain his or her conduct during the proceedings. *State v. Machner,* 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908–09 (Ct. App. 1979). The trial court must be given the opportunity to apply the *Strickland v. Washington,* 466 U.S. 668, 687 (1984), two-part analysis to determine if trial counsel's performance was deficient and if that deficient performance was prejudi-

cial. *State v. Marty,* 137 Wis. 2d 352, 356, 404 N.W.2d 120, 122 (Ct. App. 1987).

■

Krieger did not make a proper record and we are left with nothing to review. We cannot rely on the argument of appellate counsel, who also served as trial counsel, that with Berlin's testimony he would have conducted the defense differently. *See Weatherall v. State,* 73 Wis. 2d 22, 25-26, 242 N.W.2d 220, 222, *cert. denied,* 429 U.S. 923 (1976).[8] We refuse to rummage through the record and speculate whether counsel's performance was deficient; whether it prejudiced Krieger; and whether it constitutes a "manifest injustice."

Our conclusion that the factual situation does not fall under any of the six examples in the ABA standard does not end our inquiry. The list is not exhaustive and we must determine if "manifest injustice" can be found on the merits or in the process which led to conviction. *See Griffin v. State,* 43 Wis. 2d 385, 388-89, 168 N.W.2d 571, 573 (1969).

■

Potential flaws in the process have included the improper taking of a guilty plea at a preliminary examination, *Brisk v. State,* 44 Wis. 2d 584, 588-89, 172 N.W.2d 199, 202 (1969); failure to establish a factual basis to support a plea, *White v. State,* 85 Wis. 2d 485, 488, 271 N.W.2d 97, 98 (1978); a confession given in violation of a defendant's constitutional rights, *Griffin,* 43 Wis. 2d at 389, 168 N.W.2d at 573; and the imposition of a sentence not authorized by law, *see White* at

---

[8] As the supreme court has noted: "Unlike the traveler in the familiar [Robert] Frost poem *[The Road Not Taken],* an attorney cannot save the road not taken 'for another day.' " *Vara v. State,* 56 Wis. 2d 390, 393, 202 N.W.2d 10, 12 (1972).

492, 271 N.W.2d at 100. None of the foregoing is present here.

"Manifest injustice" may also be found on the merits: the facts upon which the plea is based may not constitute a crime, or the defendant may have a complete defense to the crime charged. *See Pohlhammer,* 78 Wis. 2d at 523-24, 254 N.W.2d at 481. Neither situation exists here.

We hold that newly discovered evidence may also create a "manifest injustice." For newly discovered evidence to constitute a "manifest injustice" and warrant the withdrawal of a plea, the defendant must show, at a minimum, the following criteria:

> (1) the evidence was discovered after trial; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue; (4) the evidence is not merely cumulative to the evidence presented at trial; and (5) a reasonable probability exists of a different result in a new trial.

*State v. Coogan,* 154 Wis. 2d 387, 394-95, 453 N.W.2d 186, 188 (Ct. App. 1990).

The newly discovered evidence test is not applicable just to motions for a new trial. It is equally applicable where the defendant seeks to withdraw a plea, because of the requirement that all pleas be supported by evidence establishing a factual basis to support the plea. *See Morones v. State,* 61 Wis. 2d 544, 550, 213 N.W.2d 31, 35 (1973). Facts meeting the newly discovered evidence test could establish that conduct originally admitted by the defendant did not constitute the offense charged. *See id.* at 547-48, 213 N.W.2d at 33-34.

255

Berlin's opinion that Krieger suffers from pedophilia; that pedophilia is a mental disorder; and that, as a result, Krieger was not criminally responsible when he committed at least twenty sexually-related crimes over five years does not satisfy this well-established test of newly discovered evidence.

The record shows that, prior to sentencing, counsel had available voluminous evidence of Krieger's mental health. Krieger was being treated by a licensed psychologist in Wisconsin. He also completed a seven-week intensive, inpatient treatment program at a psychiatric hospital in Louisiana specializing in the treatment of sexual addiction. As a part of the inpatient treatment, Krieger was subjected to a medical, psychiatric and psychological assessment which concluded that, upon admission, he was suffering from depression and sexual addiction. Despite this exhaustive study, Krieger failed to obtain any diagnosis that his sexual addiction met the standards of sec. 971.15(1), Stats.

Krieger has failed to differentiate the voluminous psychiatric evidence available before sentencing from Berlin's opinion that Krieger met the standards of sec. 971.15(1), Stats., and was not responsible for his conduct occurring after sentencing. We conclude that Berlin's opinion was nothing more than the newly discovered importance of existing evidence and does not constitute "manifest injustice." *See Vara v. State,* 56 Wis. 2d 390, 394, 202 N.W.2d 10, 12 (1972).

Krieger also argues that the trial court erred in not considering the uncontradicted evidence presented in Berlin's affidavit. This argument ignores the proposition that the finder of fact is free to disbelieve the evidence presented by either side. *See State v. Sarinske,* 91 Wis.

2d 14, 48, 280 N.W.2d 725, 740 (1979). Even an uncontradicted opinion of an expert on the mental state of a defendant at the time of the commission of an offense can be rejected by the fact finder. *See id.*[9] The record and its reasonable inferences support the court's refusal to adopt Berlin's opinion. The opinion was based on information provided to Berlin by Krieger and his counsel and on one face-to-face interview with Krieger. These are grounds enough for the court to question the opinion. *See id.* at 49, 280 N.W.2d at 741.

We conclude that the trial court properly denied Krieger's motion to withdraw his plea. The factual situation has failed to establish "manifest injustice," either in the process that led to Krieger's plea or in the merits of his proferred defense of lack of criminal responsibility.

## MODIFICATION OF SENTENCE

In preparation of his motion to modify his sentence, Krieger commissioned a survey of incarcerated sex offenders in the Wisconsin prison system.[10] The purpose of the survey was to establish that sex offenders were at greater risk for various forms of physical, sexual and

---

[9]The Wisconsin Supreme Court has repeatedly expressed skepticism over psychiatric testimony concerning a defendant's state of mind. It has noted that "there is substantial doubt in respect to the trustworthiness and reliability of psychiatric testimony." *Steele v. State,* 97 Wis. 2d 72, 95, 294 N.W.2d 2, 12 (1980). The trial court cannot be faulted for refusing to have blind faith in all phases of psychiatry when the supreme court does not. *See id.*

[10]For purposes of this appeal, the state does not challenge the survey's methodology or the credentials of the statistician who developed and conducted the survey. Therefore, we will not discuss in any detail the survey or its specific findings.

psychological abuse than non-sex offender inmates. From the responses received, Krieger concluded that the incidents of abuse occur to a statistically significant greater degree with sex offenders than with those in the general population.

With this conclusion in hand, Krieger sought a reduction of his fifty-year sentence to fifteen years, plus lifetime probation, and he volunteered for treatment with Depo-Provera. Before the trial court, he argued that these conditions of confinement were a "new factor" that justified a modification of his sentence. On appeal, he has abandoned the "new factor" argument. He now argues that the trial court erred in refusing to review its own sentence for an abuse of discretion because the conditions of confinement make the sentence unduly harsh and unconscionable.

We see three reasons why it is not necessary for this court to consider whether conditions of confinement can be grounds for modification of a sentence and whether the trial court erred in refusing to review its own sentence.

First, Krieger has failed to establish a violation of his eighth amendment rights. The eighth amendment to the federal Constitution is applicable to the states by virtue of the due process clause of the fourteenth amendment, and the state is prohibited from inflicting cruel and unusual punishment on prisoners. *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir. 1990). As the Supreme Court has stated:

> "[C]onditions of confinement" may constitute cruel and unusual punishment because such conditions "are part of the penalty that criminal offenders pay for their offenses against society." . . .

258

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, [where] that conduct occurs in connection with establishing conditions of confinement . . ..

*Whitley v. Albers,* 475 U.S. 312, 319 (1986) (citations omitted).

The survey responses from incarcerated inmates are inadequate to present any evidence that the Department of Corrections has "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the [Department's] failure to prevent it." *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied,* 479 U.S. 816 (1986). Therefore, we conclude that Krieger has not established that the treatment of convicted sex offenders in the prisons rises to the level of a violation of the eighth amendment.

Second, even if Krieger had established "obduracy and wantonness" on the part of prison officials, he would not be entitled to a modification of his sentence, but only to corrective measures directed to changing the conditions of confinement. *See People v. Sundstrom,* 638 P.2d 831, 831 (Colo. Ct. App. 1981); *Newton v. Cupp,* 474 P.2d 532, 536 (Or. Ct. App. 1970).

The same rule applies in Wisconsin. In both *State v. Lynch,* 105 Wis. 2d 164, 312 N.W.2d 871 (Ct. App. 1981), and *State v. Gibbons,* 71 Wis. 2d 94, 99, 237 N.W.2d 33, 36 (1976), the appellate courts held that "[p]risoners are entitled to challenge the conditions of

their confinement by appropriate writs," *Lynch* at 171, 312 N.W.2d at 875, and not by seeking a modification of their sentence.

Finally, the purpose of the eighth amendment's prohibition against "cruel and unusual punishment" is limited to protecting and safeguarding an inmate from an environment where degeneration is probable and self-improvement is unlikely because of existing conditions, whether physical or mental. The enforcement of the eighth amendment's prohibition is not accomplished by a sentence modification because that would do nothing to improve the conditions of confinement to insure the physical and mental well-being of the inmates.

*By the Court.*—Judgment and order affirmed.