COURT OF APPEALS
DECISION
DATED AND FILED

January 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2059-CR**

Cir. Ct. No. **2016CF90**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

STERLING ROSS OLSEN,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Rock County: JAMES P. DALEY and KARL HANSON, Judges. *Affirmed*.

Before Blanchard, Kloppenburg and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Sterling Olsen appeals a judgment of conviction for armed robbery as a party to the crime and an order denying postconviction relief.[1]  Olsen contends that his plea lacked a factual basis; that he did not understand that his plea waived his right to a trial and that he pled only because he felt "scared" and "pressured"; and that his trial counsel was ineffective. Alternatively, Olsen seeks sentence modification on the ground that his sentence was unduly harsh.  For the reasons set forth in this opinion, we reject these contentions.  We affirm.

¶2      On January 14, 2016, Olsen was charged with armed robbery, burglary, false imprisonment, criminal damage to property, and misdemeanor theft, all as a party to a crime.  The criminal complaint alleged the following. During the early morning hours of January 12, 2016, police responded to a report of an armed robbery at a home in Janesville.  While police were on scene, B.F. returned to the home.  B.F. informed police that, several days prior, he had shown Olsen $3,500 in cash.  B.F. stated that he believed that Olsen arranged the robbery to steal the money.  Police made contact with Olsen, who confirmed that B.F. had shown him more than $3,000 in cash.  Olsen told police that he and B.F. had posted a Snapchat photo of the two of them displaying the cash.  Olsen told police that B.F. had then accused Olsen of stealing $1,000 from B.F., and that B.F. had confronted Olsen about the theft and had slapped Olsen in the face.

¶3      During the police investigation on January 12, 2016, police discovered Facebook messages between Olsen and Jontae Pegeese that "suggested

_____

[1] The Honorable James P. Daley presided over the plea and sentencing hearings and entered the judgment of conviction.  The Honorable Karl Hanson presided over postconviction proceedings and entered the order denying the postconviction motion.

involvement in illicit activity over the night." Police made contact with Pegeese, who told police that Olsen had told him the previous day that there was a "guy" who sold pills and was "weak" and "flimsy" with his money. Pegeese understood that Olsen was referring to the "guy" in Olsen's recent Snapchat photo who appeared with Olsen displaying a large amount of cash. Pegeese stated that Olsen told him that they could rob the "guy" for his cash and pills.

¶4     Police also spoke to Pegeese's girlfriend that day, who told police that Pegeese told her the prior day that he had talked with Olsen about doing a robbery together that night, and that, earlier that morning, Pegeese told her he took part in the robbery with Olsen. Police again spoke with Pegeese, who then admitted that he had been picked up by Damien Hewlett for the purpose of participating in the robbery. Pegeese stated that three men he did not know were also in the car with Hewlett. He stated that Olsen was not in the car, but that Olsen was in communication with Hewlett "organizing the event."

¶5     Pursuant to a plea agreement, Olsen pled guilty to armed robbery as a party to a crime, and the remaining charges were dismissed and read in for sentencing purposes. The circuit court found that Olsen's statements in court and the criminal complaint set forth a factual basis for his plea. The court sentenced Olsen to twelve years of initial confinement and six years of extended supervision.

¶6     Olsen filed a postconviction motion raising three issues. First, Olsen argued that his plea lacked a factual basis for party-to-a-crime liability. Second, he argued that he was entitled to plea withdrawal to correct a manifest injustice because his plea was not knowing, intelligent, and voluntary. He argued that he did not understand that his plea waived his future trial rights, and that he pled guilty only because he was "scared" and "pressured." He also argued that his trial

counsel was ineffective by advising him that he would get a lesser sentence if he pled. He stated that his counsel told him that he would be sentenced to only eight years if he entered a plea, and that he would not have entered the plea but for his counsel's sentencing representations. Third, Olsen argued that he was entitled to sentence modification because his sentence was unduly harsh compared to sentences received by the other codefendants convicted of the robbery.

¶7    The circuit court held a postconviction motion hearing. At the outset of the hearing, the circuit court asked Olsen's postconviction counsel whether he intended to call any witnesses. Postconviction counsel stated that he had not procured trial counsel as a witness for the hearing, stating his belief that the hearing was to determine if a **Machner**[2] hearing would be scheduled. The court asked the State if it objected to setting a future **Machner** hearing date. The State took the position that Olsen had forfeited his ineffective assistance of counsel claim by failing to obtain trial counsel's testimony for the hearing. The circuit court found that Olsen had adequate notice that the hearing would be an evidentiary hearing on the postconviction motion because Olsen received notice of the hearing and because the court's calendar indicated that the hearing was scheduled for a three-hour period. The court concluded that Olsen had waived his ineffective assistance of counsel claim by failing to have his trial counsel present for the hearing. The court stated that it would address the other claims raised in the postconviction motion.

¶8    The parties first argued whether there was a factual basis for Olsen's plea as a party to the crime. The court found that there was a factual basis to

---

[2] **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

support the plea, citing information from the criminal complaint and from the presentence investigation report (PSI).

¶9    The court then moved on to the next argument in the postconviction motion, that is, Olsen's claim for plea withdrawal on the ground that the plea was not knowing, intelligent, and voluntary.  The court noted that Olsen had the burden to demonstrate that his plea was not knowing, intelligent, and voluntary.  The court reiterated its finding that Olsen had waived his ineffective assistance of counsel claim.  The court asked postconviction counsel whether the court needed to address anything else on that claim, despite the waiver.  Defense counsel stated that there was nothing else for the court to address.  The court therefore did not make any findings as to Olsen's claim that his plea was not knowing, intelligent, and voluntary.

¶10    Finally, the court addressed whether Olsen's sentence was unduly harsh.  The court explained that the sentence was warranted based on Olsen's role in organizing the robbery.  The court denied Olsen's postconviction motion. Olsen appeals.

¶11    A defendant seeking to withdraw a plea after sentencing must demonstrate by clear and convincing evidence that plea withdrawal is necessary to correct a manifest injustice.  *See State v. Krieger*, 163 Wis. 2d 241, 249-51, 471 N.W.2d 599 (Ct. App. 1991).  A manifest injustice occurs if the circuit court fails to establish a factual basis for the plea.  *See id.* at 254-55.  "[E]stablishing a factual basis … is necessary for a valid plea" and "helps ensure that the defendant's plea is knowing and intelligent." *State v. Lackershire*, 2007 WI 74, ¶¶34-35, 301 Wis. 2d 418, 734 N.W.2d 23.  The question is whether the "undisputed facts actually constitute the crime charged," which this court reviews

de novo as a question of law. *See id.*, ¶¶24, 48; *see also State v. Stewart*, 2018 WI App 41, ¶15, 383 Wis. 2d 546, 916 N.W.2d 188.

¶12 "'[W]hen applying the manifest injustice test, "a reviewing court may look beyond the plea hearing transcript" to the totality of the circumstances.'" *Stewart*, 383 Wis. 2d 546, ¶15 (quoted source omitted). We may look to other portions of the record, including the sentencing hearing transcript, to determine whether a factual basis for the plea has been established. *See id.* Proof beyond a reasonable doubt is not necessary to establish the factual basis. *See State v. Spears*, 147 Wis. 2d 429, 435, 433 N.W.2d 595 (Ct. App. 1988). Moreover, the factual basis requirement is further relaxed when, as here, a plea has been negotiated between the parties. *See State v. Smith*, 202 Wis. 2d 21, 25, 549 N.W.2d 232 (1996).

¶13 Olsen contends that there are insufficient facts in the record to establish a factual basis for his plea to armed robbery as a party to a crime. Party-to-a-crime liability may be established by showing that the defendant intentionally aided and abetted the commission of the crime or was a party to a conspiracy with others to commit the crime. WIS. STAT. § 939.05.[3] A defendant intentionally aids and abets the commission of a crime if the defendant assists those who committed the crime, or was ready and willing to assist and those who committed the crime knew of the defendant's willingness to assist. WIS JI—CRIMINAL 401. A defendant is a member of a conspiracy if, with the intent that a crime be

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

6

committed, the defendant agrees with or joins with others for the purpose of committing that crime. *Id.*

¶14    Olsen contends that there are no facts showing that he intentionally aided and abetted the armed robbery or that he was part of a conspiracy to commit the armed robbery. Olsen asserts that, in addition to the minimal facts in the complaint, the facts in the PSI show only that Olsen identified B.F.'s house for Hewlett and Pegeese and participated in discussions with them about a plan to "scare" B.F. Olsen asserts that the facts show that he then left the group when he was dropped off at his home around 2:30 p.m. and that he was sleeping and ignored multiple phone calls from Pegeese while the robbery occurred overnight. He asserts that those facts fall short of setting forth a basis for party-to-a-crime liability. He argues that this case is distinguishable from *State v. Tourville*, 2016 WI 17, 367 Wis. 2d 285, 876 N.W.2d 735, pointing out that Tourville had done acts to aid and abet that are not present here. *See id.*, ¶¶45, 51 (factual basis for plea to felony theft as party to a crime found where three men stole a gun safe and then picked up Tourville, they all went to Tourville's campsite and participated in opening the safe, and Tourville advised the men where to dispose of the safe and was paid for his assistance). Olsen also contends that, if he had been part of a conspiracy, he withdrew from the conspiracy by withdrawing from the group ten hours before the robbery occurred. *See* WIS JI—CRIMINAL 412 (defendant withdraws from conspiracy if the defendant no longer desires that the crime be committed and notifies the other parties of the withdrawal within a reasonable amount of time before commission of the crime to allow the others to also withdraw).

¶15    The State responds by highlighting the following additional facts from the complaint and the PSI, which the State asserts establish a factual basis for

the plea. Olsen stole money from B.F., which led to a dispute between them. Olsen told Pegeese that he knew a drug dealer who was "weak" and "flimsy" with his money, and that they could rob him and get a lot of cash and pills. Olsen told Pegeese and Hewlett that the money displayed in the Snapchat photo belonged to B.F. Olsen showed Pegeese and Hewlett where B.F.'s house was located and told them what kind of car B.F. drove. Olsen acknowledged that they had a plan for Olsen, Pegeese, and Hewlett to "wait for [B.F.], beat him up and take his money." Olsen told Pegeese, "Ok I'm down," meaning he was in for the robbery, although Olsen did not plan to participate. Olsen's Facebook in-box "suggested involvement in illicit activity" during the night of the robbery. Specifically, Olsen sent messages to Pegeese that Olsen could only be the driver because he did not want to be seen. Olsen was not present during the robbery, but was "in communication" with Hewlett and was "organizing the event." The next day, Olsen sent a message to Pegeese asking whether he "did that thing," and Pegeese answered that he had not.

¶16    The State argues that *Tourville* does not suggest that a defendant must be present during a crime to establish a factual basis for party-to-a-crime liability. *See Tourville*, 367 Wis. 2d 285, ¶49 ("In order to aid and abet a crime, the defendant need be only a willing participant. 'Such participation as would constitute aiding and abetting does not even require that the defendant be present during the [crime].'" (citation omitted; quoted source omitted)). The State contends that the facts showing that Olsen continued to communicate with the others as to the robbery establish that Olsen did not withdraw from the conspiracy.

¶17    We conclude that there was a sufficient factual basis for Olsen's plea to armed robbery as a party to a crime. The facts set forth above are sufficient to establish that Olsen joined with others in a plan to take money from B.F. by force,

that Olsen then assisted the others involved in the plan by identifying B.F.'s house and car and remaining in communication and organizing the robbery while it was underway, and that Olsen then checked on the status of the planned robbery the following day.  *See* WIS. STAT. §§ 943.32(2) (setting forth elements of armed robbery) and 939.05(2) (setting forth party-to-a-crime liability).  Because the facts in the record set forth a sufficient factual basis for Olsen's plea to armed robbery as a party to a crime, Olsen is not entitled to plea withdrawal based on lack of a factual basis.

¶18    A manifest injustice also occurs if a plea was not knowing, intelligent, and voluntary based on facts extrinsic to the plea colloquy, such as a plea that was coerced or that resulted from ineffective assistance of counsel.  *See State v. Sulla*, 2016 WI 46, ¶¶24-25, 369 Wis. 2d 225, 880 N.W.2d 659; *State v. Taylor*, 2013 WI 34, ¶49, 347 Wis. 2d 30, 829 N.W.2d 482.  At an evidentiary hearing, the defendant has the burden to prove by clear and convincing evidence that withdrawal of the guilty plea is necessary to correct a manifest injustice.  *See State v. Hoppe*, 2009 WI 41, ¶60, 317 Wis. 2d 161, 765 N.W.2d 794.  On our review of a circuit court's decision following an evidentiary hearing, we accept the court's factual findings unless they are clearly erroneous, but we independently determine whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary.  *See id.*, ¶61.

¶19    Olsen contends that his plea was not knowing, intelligent, and voluntary on grounds that he did not understand that his plea would waive his right to a trial, and because he was "scared" and "just wanted to get it over with."  He cites his letter to his postconviction counsel seeking a trial, and contends that he would not have asked for a trial if he understood that his plea waived that right. Olsen argues that his assertions that he was "scared" and "just wanted to get it

over with" establish that his plea was not intelligently entered because it was based on emotion rather than logic. He also contends that his trial counsel was ineffective by allegedly telling him that he would receive a lesser sentence of only eight years if he entered a plea, and that he was pressured into entering his plea by his counsel's erroneous advice.

¶20 The problem with Olsen's arguments that his plea was not knowing, intelligent, and voluntary is that he failed to pursue them at the postconviction motion hearing. At the hearing, Olsen did not argue that he did not understand that his plea waived his right to a trial or that he only pled because he felt scared and pressured. He did not present any evidence to meet his burden to prove those claims, and the circuit court made no factual findings related to them. Olsen did not properly pursue his claim of ineffective assistance of counsel because he failed to preserve his trial counsel's testimony. *See State v. Giebel*, 198 Wis. 2d 207, 218, 541 N.W.2d 815 (Ct. App. 1995) ("'[I]t is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel' at a postconviction hearing." (quoted source omitted)).[4] Because Olsen effectively abandoned these claims in the circuit court, they were not properly preserved for

---

[4] Olsen contends that the circuit court erred by finding that Olsen waived his claim of ineffective assistance of counsel when he failed to procure his trial counsel's testimony at the postconviction motion hearing. He asserts that he believed that the hearing would be a status hearing to determine whether to hold an evidentiary hearing. However, Olsen does not develop any argument challenging the circuit court's factual finding that Olsen was provided sufficient notice that the scheduled hearing was an evidentiary hearing. Instead, Olsen urges this court to reach the issue despite forfeiture and to remand for an evidentiary hearing. *See State v. Leitner*, 2001 WI App 172, ¶42, 247 Wis. 2d 195, 633 N.W.2d 207 (forfeiture is a matter of judicial administration, and this court may reach forfeited issue if the matter is a recurring issue of sufficient importance). We are not persuaded that this issue is properly addressed despite the conceded forfeiture.

appeal. *See **State v. Ledger***, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993).[5]

¶21    Finally, Olsen contends that his sentence was unduly harsh. He points out that he received a harsher sentence than some of his codefendants who were present during the armed robbery, asserting that he deserved a lesser sentence since he was not actually present. We are not persuaded.

---

[5] If the circuit court had exercised its discretion to deny Olsen's postconviction motion without a hearing, we would have affirmed that decision on appeal. *See **State v. Sulla***, 2016 WI 46, ¶27, 369 Wis. 2d 225, 880 N.W.2d 659 ("'[I]f the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief,'" the court may exercise its discretion to deny the motion without an evidentiary hearing (quoted source omitted)); ***State v. Howell***, 2007 WI 75, ¶78, 301 Wis. 2d 350, 734 N.W.2d 48 (we independently review the legal question of whether a postconviction motion sets forth sufficient facts to entitle the defendant to relief and, if so, whether the record nonetheless conclusively demonstrates that the defendant is not entitled to relief). In his postconviction motion, Olsen asserted in conclusory fashion that he did not understand that his plea waived his right to a trial, that he only entered his plea because he felt scared and pressured, and that his counsel told him that he would receive a lesser sentence of eight years if he pled. However, Olsen's only factual support for his claim that he did not understand that his plea waived his right to a trial was his letter to his postconviction counsel stating that he wanted a trial. Olsen argued that he would not have stated to his counsel that he wanted a trial if he knew that his guilty plea had waived his right to a trial. We fail to follow the logic of this argument. Nothing about Olsen's statement to his counsel indicated that Olsen believed he was entitled to a trial despite his guilty plea. Additionally, Olsen's conclusory claims of feeling scared and pressured to enter a plea were not supported by sufficient factual assertions to require a hearing. *See **State v. Allen***, 2004 WI 106, ¶23, 274 Wis. 2d 568, 682 N.W.2d 433 (explaining that allegations in a postconviction motion should include "the five 'w's' and one 'h' .... A motion that alleges, within the four corners of the document itself, the kind of material factual objectivity we describe above will necessarily include sufficient material facts for reviewing courts to meaningfully assess a defendant's claim."). Finally, Olsen's claim of ineffective assistance of counsel did not sufficiently explain why he would not have pled guilty absent counsel's alleged advice that a guilty plea would result in an eight-year sentence. *See **id.**; see also **State v. Provo***, 2004 WI App 97, ¶18, 272 Wis. 2d 837, 681 N.W.2d 272 ("'Counsel's incorrect prediction concerning defendant's sentence ... is not enough to support a claim of ineffective assistance of counsel.'" (quoted source omitted)). Because Olsen's claims that his plea was not knowing, intelligent, and voluntary were conclusory and lacked sufficient factual support, we would have affirmed the circuit court's decision had the court denied the motion without a hearing.

¶22    A sentence is unduly harsh "'only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'" *See* ***State v. Grindemann***, 2002 WI App 106, ¶31, 255 Wis. 2d 632, 648 N.W.2d 507 (quoted source omitted). "A mere disparity between the sentences of codefendants is not improper if the individual sentences are based upon individual culpability and the need for rehabilitation." ***State v. Toliver***, 187 Wis. 2d 346, 362, 523 N.W.2d 113 (Ct. App. 1994). Thus, "[t]he mere fact that the … sentences [among codefendants] are different is not enough to support a conclusion that [a] sentence is unduly disparate. Even leniency in one case does not transform a reasonable punishment in another case into a cruel one." ***State v. Perez***, 170 Wis. 2d 130, 144, 487 N.W.2d 630 (Ct. App. 1992).

¶23    Olsen asserts that his sentence was unduly harsh based solely on the fact that Olsen, unlike his codefendants, was not physically present during the armed robbery. However, Olsen does not argue that the circuit court failed to impose sentences based on individual culpability and the need for rehabilitation, and points to no facts in the record as to the rationales underlying his codefendants' sentences.

¶24    We conclude that Olsen's sentence was not unduly harsh. The sentencing court explained that it considered the facts pertinent to the standard sentencing factors and objectives, including the seriousness of the crime and Olsen's role in organizing it, Olsen's character, and the need to protect the public. *See* ***State v. Odom***, 2006 WI App 145, ¶7, 294 Wis. 2d 844, 720 N.W.2d 695. Additionally, the court imposed a sentence well within the maximum Olsen faced upon his conviction. *See* WIS. STAT. §§ 943.32(2) (armed robbery is a Class C

felony); 939.50(3)(c) (Class C felony punishable by up to forty years of imprisonment) (2013-14). A sentence well within the maximum is unlikely to be unduly harsh. *See **Grindemann**,* 255 Wis. 2d 632, ¶31. In sum, the fact that Olsen was not physically present but received a harsher sentence than some of his codefendants who were at the robbery scene is insufficient to establish that Olsen's sentence was unduly harsh.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.